88 569
9ap 90
88 569
26ap557
88 569
30ap 93
155a 698
88 569
157a 689
88h 569
f 52ad222

THE NEW YORK SECURITY AND TRUST COMPANY, Respondent, *v.* THE SARATOGA GAS AND ELECTRIC LIGHT COMPANY and Others, Defendants; THE FIRST NATIONAL BANK of Saratoga Springs and Others, Appellants.

WILLIAM V. REYNOLDS, as Receiver, Appellant, *v.* THE NEW YORK SECURITY AND TRUST COMPANY and Others, Respondents.

THE NEW YORK SECURITY AND TRUST COMPANY, Respondent, *v.* THE SARATOGA GAS AND ELECTRIC LIGHT COMPANY and Others, Defendants; WILLIAM V. REYNOLDS, as Receiver, Appellant.

WILLIAM V. REYNOLDS, as Receiver, Appellant, *v.* THE NEW YORK SECURITY AND TRUST COMPANY and WALTER STANTON and Others, Respondents.

THE NEW YORK SECURITY AND TRUST COMPANY, Respondent, *v.* THE SARATOGA GAS AND ELECTRIC LIGHT COMPANY and Others, Defendants; WILLIAM V. REYNOLDS, as Receiver, Appellant.

*Equity — trust mortgage executed by a corporation — cross-action — a stranger cannot question the irregular appointment of a trustee — notice of the exercise of an option to declare due all the bonds secured by a mortgage is an executive duty not requiring a resolution of the board of directors — confirmation by the board — a mortgage covering after-acquired personal property of a corporation — power to mortgage it — effect of recording the mortgage — rule as to fixtures between mortgagee and bond-holders — what are fixtures — necessity of proof that the property was subsequently acquired — property necessarily consumed in the conduct of a business — when separate judgments in two actions are necessary — nature of a cross-action in chancery — discretion of the court in taking property from one receiver and transferring it to another.*

In 1887 the Saratoga Gas and Electric Light Company, a domestic corporation, in order to secure an issue of bonds, mortgaged to the American Loan and Trust Company, as trustee, its corporate property of every nature, "whether now owned or hereafter acquired or constructed" by it. The mortgage also provided that any vacancy in the trusteeship from whatever cause might be filled by a written appointment executed in a manner prescribed; or, if not thus made within thirty days, then "by the Supreme Court of the State of New York for the fourth judicial district, upon application of any party in interest on such notice as the court may prescribe." It also provided that in case of a default in payment, existing for sixty days, the principal sum secured by all the bonds should at once become payable at the trustee's option, to be exercised, however, only upon the written request of the holder or holders of a majority of the bonds.

In May, 1891, the American Loan and Trust Company was dissolved because of its insolvency, and J. Edward Simmons was appointed its permanent receiver. In May, 1892, Walter Stanton applied to the court by a petition, in which he stated that he owned or controlled a majority of the bonds of the Saratoga Gas and Electric Light Company, and asked for the appointment of a new trustee; the president of the Saratoga Gas and Electric Light Company consented in writing to the appointment of the New York Security and Trust Company, and on May 23, 1892, on notice to the Attorney-General and to Simmons, as receiver, the New York Security and Trust Company was appointed trustee under the mortgage or deed of trust. The order appointing the New York Security and Trust Company as trustee was made in the first judicial district and not in the fourth judicial district, as it was provided that it should be in the mortgage. The trustees of the Saratoga Gas and Electric Light Company confirmed this action by a resolution, and later, by an agreement executed on June 10, 1892, conveyed all the property covered by the mortgage, subject to the same conditions, to the new trustee, which accepted the conveyance and trust. This agreement was executed by the president of the gas and electric light company, and by its treasurer, William V. Reynolds, but as alleged without authority.

Thereafter a reorganization was undertaken, under which the bondholders deposited with the New York Security and Trust Company 271 bonds out of a total of 300 — the latter company acting as trustee and paying interest on the bonds until August 1, 1893, when a default occurred.

On the 11th day of November, 1893, the secretary of the New York Security and Trust Company notified the Saratoga Gas and Electric Light Company, in writing, that the former company exercised its option to declare the principal of all the bonds immediately due, and on the same day the New York Security and Trust Company, upon the written request of a majority of the bondholders of the Saratoga Gas and Electric Light Company, began a foreclosure of the mortgage, and in the action first above entitled, on November 16, 1893, Lafayette B. Gleason was appointed receiver of the gas and electric light company for the benefit of the plaintiff. An amended complaint was filed December 23, 1893.

The First National Bank of Saratoga Springs, which was made a party defendant to the foreclosure action, answered, alleging that on the 27th day of September, and on the 11th day of November, 1893, it recovered judgments against the gas and electric light company and levied on its property, and that its executions were liens "upon any property acquired by said gas company after the execution and delivery of the mortgage set out in the complaint, prior and superior to the lien of said mortgage;" that the mortgage, so far as it related to personal property, was void because the mortgagor used and sold property covered by the mortgage and applied the proceeds to the purchase of other property instead of applying them to the payment of the mortgage debt, and that the appointment of the plaintiff as trustee was void, and asked judgment that its liens be declared absolute for the balance due it; that the property used and sold by the gas and electric light

company since the execution of the mortgage be deemed a payment of the mortgage *pro tanto ;* that the mortgage be declared fraudulent as against the bank, and that the plaintiff be declared to be neither a trustee nor entitled to maintain the action.

Edward F. Andrews, also made a party defendant, interposed an answer in which he alleged that he had obtained a judgment against the gas and electric light company and that under it sequestration proceedings were taken against the corporation, resulting in the appointment of William V. Reynolds as receiver on the 16th day of December, 1893; he attacked the legality of the appointment of the trust company as trustee; the use of the corporate property by the corporation, and in all other respects asked the same relief as the First National Bank.

William V. Reynolds, also made a party defendant, set forth his appointment as receiver in the sequestration proceedings, put in issue the legality of the appointment of the trust company as trustee and its exercise of the option to declare the whole amount of the principal of the bonds to be due, and asked that the appointment of the trust company as trustee be vacated.

On the 28th day of April, 1894, William V. Reynolds, as such receiver, began the action secondly above entitled and alleged in his complaint the commencement of the foreclosure action and the appointment of the New York Security and Trust Company as trustee; he further alleged that the notice upon which this appointment was made was given only to the Attorney-General and the attorney for the American Loan and Trust Company; that Walter Stanton did not at the time of his petition own or control any of the bonds, and that neither Simmons, as receiver, nor the People owned any of the bonds; and he asked as relief that the order appointing the trustee be vacated and that the complaint in the foreclosure action be dismissed.

The two actions, the first for a foreclosure of the mortgage and the second by Reynolds, as receiver, were tried at the same time. A foreclosure was directed in the first action; in the second the complaint was dismissed; separate judgments were entered in each action.

The Saratoga National Bank, Andrews, and Reynolds, as receiver, appealed in the first action. In the second action Reynolds, as receiver, appealed. In both actions Reynolds, as receiver, moved to have the judgments set aside and to have one judgment entered upon the ground that in both there was but one cause of action. These motions were denied and the appeals of Reynolds therein constitute the third and fourth appeals above entitled. Finally Reynolds made a motion for an order directing Gleason, as receiver, to deliver to Reynolds, as receiver, the possession of the mortgaged property. The motion was denied, and Reynolds' appeal from that order constitutes the appeal fifthly above entitled.

*Held,* upon a consideration of the appeals of Reynolds from the two judgments, that as the original trustee under the mortgage had become insolvent, the court had power to appoint a new trustee, and that while the appointment of the New York Security and Trust Company as trustee might have been irregular, it was not void;

That as two applications to vacate it had been denied, and as it appeared affirmatively that it met the approval of the gas and electric light company and of a very large proportion of the bondholders, and as Reynolds, as receiver, did not represent either the mortgagor, the mortgagee or the bondholders and was practically a stranger, having no interest in the matter, he was not in a position to question the jurisdiction of the court or the regularity of the proceedings;

That the fact that the directors of the New York Security and Trust Company had not authorized the secretary of that company to send the notice which he did send to the gas and electric light company, to the effect that the New York Security and Trust Company elected to exercise its option to declare the principal of all the bonds due because of the default in the payment of interest, did not make the notice void;

That this notification was a mere executive duty which the executive officers of the New York Security and Trust Company could perform without a prior resolution authorizing the act;

That if a resolution were necessary, a resolution of the board of directors of the trust company, shown to have been passed after the commencement of the foreclosure action, was a sufficient confirmation of the action of the secretary;

That the mortgage was not invalid because it covered after-acquired personal property;

That the company had power to make the mortgage, and, as it had been properly recorded, it was, under the provisions of chapter 171 of the Laws of 1891, notice to all persons of a lien, not only upon the real property, but also upon the personal property of the corporation;

That as a valuable portion of the property of a gas and electric light corporation consists ordinarily in its tools and machinery, which must from time to time be renewed, and also in improved appliances necessarily introduced, such a mortgage should, in the interest of investors, be held to cover after-acquired property of this nature;

That a liberal rule should be adopted in this respect, in the case of such corporations, to protect bondholders and mortgagees;

That, even if this rule were questionable, no proof was made upon the trial by the appellants, the First National Bank of Saratoga Springs and Andrews, that any of the property, on which they claimed a lien, was purchased after the execution of the mortgage, except certain dynamos and exciters;

That as it appeared from the evidence that these were intended as permanent improvements to the freehold, designed to be used until worn out, they must be deemed to be a part of the realty;

That as to so much of the mortgaged property, alleged to have been used and disposed of, as consisted of coal, oil, lime and similar substances, these were necessary to the conduct of the business, and their cost could not in any view be credited upon the mortgage as a payment;

That the motions of Reynolds, as receiver, to vacate the judgments in both actions, and to direct the entry of a single judgment, were properly denied; that as the cause of action set forth in the second action, called a cross-action, was not a defense to the first or foreclosure action, and as the parties were not

the same in both actions, and as the complaint in the second action was dismissed, separate judgments were necessary and proper.

*It seems,* that the chancery practice by cross-action was abolished by section 3339 of the Code of Civil Procedure, and was not preserved by section 217 of said Code;

That the motion of Reynolds, as receiver, relative to Gleason, as receiver, was properly denied; that whether the court should take the mortgaged property from Gleason, the receiver appointed in the foreclosure action, and turn it over to Reynolds, the receiver appointed in the sequestration proceedings, was a matter resting in its discretion, and that upon the facts the discretion of the court below had been properly exercised.

APPEALS by the defendants, The First National Bank of Saratoga Springs and others, from a judgment of the Supreme Court in an action in which the New York Security and Trust Company was plaintiff and the Saratoga Gas and Electric Light Company and others were defendants, entered in the office of the clerk of the county of Saratoga on the 21st day of November, 1894, upon the decision of the court directing a foreclosure of the mortgage upon the premises described in the complaint, rendered after a trial at the Saratoga Special Term.

Also an appeal by the plaintiff, William V. Reynolds, as receiver of the Saratoga Gas and Electric Light Company, from a judgment of the Supreme Court, rendered in an action in which the said Reynolds, as such receiver, was plaintiff and the New York Security and Trust Company and others were defendants, entered in the office of the clerk of the county of Saratoga on the 19th day of September, 1894, upon the decision of the court dismissing the complaint upon the merits, rendered after a trial at the same Special Term and at the same time with the action first above mentioned.

Also an appeal by said Reynolds, as such receiver and defendant, from an order of the Supreme Court, made in the action first herein above set forth at the Schenectady Special Term on the 23d day of November, 1894, and entered in the Saratoga county clerk's office, denying his motion to set aside the decision and judgment in said action secondly hereinabove set forth and to enter one judgment in both actions.

Also an appeal by said Reynolds, as such receiver and plaintiff, from an order of the Supreme Court, made in the action secondly

hereinabove set forth at the same Special Term on the 23d day of November, 1894, denying his motion to set aside the decision and judgment in said action and to enter one judgment in both actions.

Also an appeal by said Reynolds, as such receiver and defendant, from an order of the Supreme Court, made in the action first above herein set forth at the Schenectady Special Term on the 4th day of May, 1895, denying his motion for an order directing Lafayette B. Gleason, as receiver of the Saratoga Gas and Electric Light Company, to pay the coupons upon the first mortgage bonds of said company due February 1, 1894, and that Gleason, as receiver, turn over to Reynolds, as receiver, the property described in the complaint.

The answer of Edward F. Andrews, defendant, interposed in the action first above entitled, alleged that Benjamin M. Whealey duly recovered a judgment against the Saratoga Gas and Electric Light Company on the 8th day of July, 1893, before a justice of the peace ; that on or about October 12, 1893, execution was issued thereon and returned unsatisfied ; that on the same day the judgment was duly assigned to him; that on October 16, 1893, he began an action in this court to sequestrate the property of the corporation, and that on the 4th day of December, 1893, he obtained a judgment sequestrating its property and appointing William V. Reynolds as receiver, and that the latter had duly qualified and entered upon the performance of his duties.

*Edward Winslow Paige,* for William V. Reynolds, receiver, appellant.

*Edgar T. Brackett,* for First National Bank of Saratoga Springs, appellant.

*John H. Benedict,* for Edward F. Andrews, appellant.

*William B. Hornblower* and *Howard A. Taylor,* for New York Security and Trust Company and Walter Stanton, respondents.

HERRICK, J. :

The above-entitled appeals all arise out of an action commenced by the New York Security and Trust Company to foreclose a

mortgage executed by the Saratoga Gas and Electric Light Company.

Appeals 1 and 2 are appeals from judgments, and Nos. 3, 4 and 5 are appeals from orders made in the course of such proceedings.

The facts in each appeal shed some light upon the others, and to save unnecessary repetition it seems to me best to consider all the appeals in a single discussion.

On the 1st day of February, 1887, the defendant, the Saratoga Gas and Electric Light Company, a corporation organized under the laws of the State of New York, and doing business at Saratoga Springs, for the purposes of securing an issue of bonds made, or to be made by it, to the amount of $300,000, each of said bonds to be in the sum of $1,000, executed a mortgage to the American Loan and Trust Company of New York, a corporation doing business as a trust company under the laws of the State of New York, as trustee; such mortgage purports to convey: "All the corporate property, real, personal and mixed, including all lands, easements, rights of way, buildings, fixtures, materials, supplies, machinery and plant, franchises, contracts and choses in action, whether now owned or hereafter acquired or constructed by said gas company, together with the appurtenances thereto, and all rents, tolls, issues, income and profits of said gas company present and future."

It was provided that said property was to be held by said trust company, its successors and assigns, in trust for the equal benefit and security of all the holders of said bonds, and it contains the usual covenants and conditions of mortgages executed for such purposes.

It provided that "Any vacancy in the trusteeship, from whatever cause, may be filled by a written appointment executed by said gas company and the holder or holders of a majority of the bonds hereby secured; or if in thirty days such appointment be not made, then by the Supreme Court of the State of New York for the fourth judicial district, upon application of any party in interest, on such notice as the court may prescribe."

Such mortgage also provided that "If any default shall be made and shall continue for sixty days as above specified, then the principal of all said bonds, although not then due by their terms, shall, at the trustee's option, become immediately due and payable; any-

thing in said bonds or herein contained to the contrary notwithstanding. · Said option shall be exercised or not exercised, and such principal declared due or such declaration annulled and withdrawn by the trustee, according to the written request of the holder or holders of a majority of said bonds."

In March, 1891, an action was brought in behalf of the People of the State of New York against the American Loan and Trust Company for a dissolution of that corporation for alleged insol-·vency; and thereafter, in the month of May, 1891, a judgment was rendered in said action dissolving such corporation, and appointing J. Edward Simmons as permanent receiver thereof.

Thereafter, and in the month of May, 1892, one Walter Stanton presented to the Supreme Court a petition, wherein he stated that he represented a majority of the bonds issued by the Saratoga Gas and Electric Light Company, and was the owner, or in possession of, and had control of the majority of said bonds at that time, and representing that the American Loan and Trust Company had become insolvent, and that J. Edward Simmons had been appointed as receiver thereof, and that no proceedings had been taken for the appointment of a successor trustee to said company, and that the interest upon said bonds which had matured May 1, 1892, was in default, and coupons therefor had been presented, but were unpaid, and asked that a successor trustee to the American Loan and Trust Company be at once appointed. On the same day the president of the Saratoga Gas and Electric Light Company executed and acknowledged an instrument, whereby he consented to the appointment of the New York Security and Trust Company as successor trustee to the American Loan and Trust Company, and requested that such company be appointed as such successor trustee, under the deed of trust or mortgage executed by the Saratoga Gas and Electric Light Company February 1, 1887. Thereupon, on the 23d day of May, 1892, notice having been given to the Attorney-General of the State, and to the receiver of the American Loan and Trust Company, an order was made at a Special Term of this court, held in the city of New York, entitled in the same proceedings, wherein and whereby the American Loan and Trust Company was dissolved, appointing and designating the plaintiff herein, the New York Security and Trust Company as successor trustee, " for

said Saratoga Gas and Electric Light Company, under the mortgage or deed of trust of said company to said American Loan and Trust Company, dated the first day of February, 1887.'

Thereafter, and on the 3d day of June, 1892, at a meeting of the trustees of the Saratoga Gas and Electric Light Company, the following was adopted: " On motion, Resolved, that the New York Security and Trust Company be appointed trustee for the bondholders of the Saratoga Gas and Electric Light Company."

On the 10th day of June, 1892, an agreement in writing was entered into, purporting to be between the Saratoga Gas and Electric Light Company, as party of the first part, and the New York Security and Trust Company as party of the second part, which agreement recites the execution of the mortgage hereinbefore referred to, to the American Loan and Trust Company as trustee, the fact that such American Loan and Trust Company had been declared insolvent, and also reciting that an order of the court made May 23, 1892, appointed the New York Security and Trust Company as successor trustee to the American Loan and Trust Company, and then follows a conveyance by the gas company to the trust company of all the property described in the mortgage theretofore executed to the American Loan and Trust Company, subject to the terms and conditions of said mortgage, and the New York Security and Trust Company in such instrument accepts the same pursuant to and under the terms and conditions of the mortgage executed to the American Loan and Trust Company.

This agreement was signed in behalf of the Saratoga Gas and Electric Light Company by the president and treasurer of said company, and properly acknowledged and verified by them as having been executed and signed by them by order of the board of directors. The treasurer so signing said instrument is the same person as William V. Reynolds, one of the appellants herein.

The appellants claim that there was no authority given to execute said instrument, and none was proved upon the trial, and the book of minutes of said company does not show that any resolution was ever adopted authorizing the execution of such instrument.

On the 1st day of December, 1893, an agreement was entered into between certain holders of such bonds and such others as might thereafter deposit their bonds in pursuance of such agree-

ment, and a committee of five named in the agreement, whereby such committee was authorized to procure the sale of all the property of the said Saratoga Gas and Electric Light Company as an entirety, and to declare the principal of said mortgage debt due, or if the same had already been declared due, to confirm the same, and to purchase the property of said company upon the foreclosure sale, and to reorganize said company in the event of its property being bid in by them, in the interest of the bondholders, and the plaintiff trust company was designated as the depositor and trustee under such agreement; and in pursuance of such agreement the majority of the bonds of said gas company are held by the plaintiff trust company.

After the order of May 23, 1893, appointing it as successor trustee to the American Loan and Trust Company, the New York Security and Trust Company assumed to act as trustee under such mortgage, receiving money from the Saratoga Gas and Electric Light Company to pay the interest upon the bonds as it became due, and paying the coupons as they were presented to it down to August, 1893.

On the 3d day of October, 1893, upon the petition of one Pruyn, who claimed to be the owner of $15,000 of said bonds, and upon the statement of the insolvency of the American Loan and Trust Company, and upon his statement also that he believed that no trustee had been appointed as successor of said American Loan and Trust Company, at a Special Term of the Supreme Court, held in Saratoga county, Messrs. Scott and Hamilton were appointed as trustees under said mortgage, to succeed the American Loan and Trust Company.

Thereafter, at a Special Term, in the county of Clinton, October 13, 1893, an order was made vacating and setting aside the order appointing Messrs. Scott and Hamilton as such trustees, upon the ground that such order had been made inadvertently, and in ignorance of the order appointing the plaintiff as such trustee.

At the same time and place a motion was made to vacate and set aside the order made in the first judicial district, dated May 23, 1892, appointing the plaintiff as such trustee, which motion was denied; the order setting aside the appointment of Scott and Hamilton, and the order denying the motion to vacate the appointment

of plaintiff as trustee were both appealed from to the General Term, and both orders were affirmed. (76 Hun, 610.)

After the commencement of the action to foreclose said mortgage, as hereinafter set forth, William V. Reynolds, by a petition verified December 27, 1893, and entitled in the action in which the American Loan and Trust Company was dissolved, and in which he stated that he had been appointed receiver of the Saratoga Gas and Electric Light Company, "by a judgment of this court in a sequestration action against the Saratoga Gas and Electric Light Company," asked the court to vacate the appointment of the trust company as trustee, upon the ground that such appointment was irregular and void, as being in contravention of the terms of the mortgage, which provided the manner in which the successor trustee should be appointed. The motion upon such petition was heard at a Special Term held by the same justice who had theretofore made the order appointing the trust company as such successor trustee. Upon such hearing the affidavits of all the members of the committee of bondholders hereinbefore referred to, who were to take charge of the interests of the bondholders, and to purchase the property and reorganize said gas company for the benefit of said bondholders, were read, in which they asked that such motion be denied, and that the trust company be continued as such successor trustee.

The motion of Reynolds to vacate the order appointing this plaintiff as trustee, in place of the American Loan and Trust Company was denied, and it does not appear that the same has ever been appealed from.

Default was made in the payment of interest upon said bonds August 1, 1893.

November 10 and 11, 1893, the holders of a majority of said bonds signed written requests, directed to the plaintiff herein, wherein it was requested to exercise the option to declare the principal of all the bonds immediately due and payable, reciting the fact that default had been made in the payment of the interest due August 1, 1893, and that such default had continued for a period of sixty days, and also requesting the plaintiff to proceed to foreclose the mortgage.

On the eleventh day of November the secretary of the plaintiff

notified the Saratoga Gas and Electric Light Company, in writing, that the plaintiff exercised its option to declare the principal of all the bonds immediately due and payable, because default had been made in the payment of interest, and that such default had continued for a period of sixty days, and on the same day the action first entitled, for a foreclosure of said mortgage, was commenced.

On the 16th day of November, 1893, Lafayette B. Gleason was appointed receiver of the Saratoga Gas and Electric Light Company for the benefit of the plaintiff in said foreclosure action.

An amended complaint and notice of pendency of action bringing in other defendants was filed in the clerk's office December 23, 1893.

The defendant, the First National Bank of Saratoga Springs, in answer to the plaintiff's complaint, alleged that before the commencement of the foreclosure action, and on or about the 27th day of September, 1893, it recovered judgments in the Supreme Court against the Saratoga Gas and Electric Light Company to the amount of over $7,900; that executions had been issued thereon, and personal property belonging to the said gas company had been levied upon and sold, and bid in by the said bank, upon which sale the amount realized, over and above the fees and expenses of the sheriff, was the sum of $1,296.06, which had been credited upon the amount of. said judgment, and that the balance of said judgment remained due and unpaid.

That thereafter, and on the 11th day of November, 1893, other executions upon said judgments were issued to the sheriff of Saratoga county, and the said bank claims that such executions are liens "upon any property acquired by said gas company after the execution and delivery of the mortgage set out in the complaint, prior and superior to the lien of said mortgage."

The bank also asserts in its answer that the mortgage sought to be foreclosed was, as against such defendant, "so far as the same was or assumed to be a mortgage upon the personal property of said * * * gas company, fraudulent and void," alleging that after the execution of such mortgage the mortgagor continued to use up, dispose of and sell property covered by the said mortgage, and instead of applying said proceeds in payment of said mortgage debt, used the same in the purchase of other property which, under the terms of said mortgage, became subject to the lien of said mort-

gage, and which in turn was itself sold and the proceeds again used as before, which process continued until the commencement of this action and the appointment of the receiver therein; that such use and disposition of the property was, by and with the consent and concurrence of said mortgagee, and of the holders of said bonds, secured by such mortgage, and such use and disposal was contemplated and agreed to when such mortgage was given.

The bank further alleges that the plaintiff was not entitled to begin or maintain the action because it was illegally and improperly appointed successor trustee to the American Loan and Trust Company and in contravention of the terms of the mortgage, wherein the manner of appointing a successor trustee was provided for, and asked judgment that the judgments and executions issued thereon in favor of such bank be declared a lien upon the property, real and personal, to the amount remaining unpaid on such judgment, and that the property bid in by such bank at the sales under such execution be declared to belong to it, not subject to the lien of the mortgage set out in the complaint, and that the value of the property used by the gas company since the execution and delivery of said mortgage be declared as against said bank to be a payment upon the mortgage set out in the complaint and the amount thereof deducted from the amount due upon the bonds and mortgage. That such mortgage be deemed fraudulent and void as against the defendant, and that it be declared that the plaintiff is not the trustee under such mortgage and is not entitled to maintain the action.

The appellant Andrews, in his answer to the complaint, set forth the obtaining of a judgment against the gas company, the return of an execution unsatisfied, the commencement thereon of sequestration proceedings against the gas company and the appointment of William V. Reynolds as receiver thereof. He also put in issue the legality of the appointment of the trust company as successor trustee, and also raised the same question as to the use of the mortgaged property by the mortgagor as is raised in the answer of the Saratoga National Bank, and asked that his judgment be declared a lien upon all the property of the gas company, and in all other respects asked the same relief as is asked by the bank in its answer.

The appellant William V. Reynolds, in his answer to the complaint set forth his appointment as receiver on the 16th day of

December, 1893, and put in issue the legality of the appointment of the trust company as successor trustee, and also put in issue the exercise of the option by the trust company to declare the whole amount of the principal of the bonds to be due, and asked that the order appointing the trust company as successor trustee be vacated and set aside, and that it be adjudged that the said trust company is not the trustee under the said mortgage.

On the 28th day of April, 1894, William V. Reynolds, as receiver, commenced an action against the New York Security and Trust Company and others, as defendants, alleging in his complaint the commencement of the action first entitled for the foreclosure of the mortgage, the dissolution of the American Loan and Trust Company, and the appointment of the New York Security and Trust Company as successor trustee to the American Loan and Trust Company, and alleging that no notice of any application for the appointment of the New York Security and Trust Company was given to any one, except to the Attorney-General and to the attorneys for the receiver of the American Loan and Trust Company, and alleging, upon information and belief, that Walter Stanton, upon whose petition such appointment was made, was not at that time the owner of any bonds issued by the Saratoga Gas and Electric Light Company, and did not have any in his possession nor under his control, and that the receiver of the American Loan and Trust Company, Simmons, did not, nor did the People of the State of New York, own any such bonds, and asked that the order appointing the New York Security and Trust Company, as successor trustee, " be reviewed, vacated, set aside and held for nothing," and also asked that the complaint in the foreclosure action, commenced by the New York Security and Trust Company, be dismissed.

Both actions, the one to foreclose the mortgage and the action of Reynolds, as receiver, to review the order appointing the trust company, as successor trustee, were by agreement tried at the same time, and resulted in a judgment dismissing the complaint in the action brought by Reynolds as plaintiff, and in a judgment and decree of foreclosure and sale in the action brought by the trust company to foreclose the mortgage. Separate decisions and separate judgments were rendered and entered in each. Final judgment in the action wherein Reynolds was plaintiff, and an interlocu-

tory judgment in the foreclosure action, was entered September 19, 1894, and final judgment of foreclosure and sale was entered in the foreclosure action November 19, 1894.

From each of these judgments appeals have been taken; from the judgment of foreclosure and sale, by the Saratoga National Bank, by Andrews and by Reynolds as receiver; and from the judgment dismissing the complaint in the action brought by Reynolds an appeal has been taken by Reynolds, which appeals constitute the first and second-entitled appeals.

The appellant Reynolds made a motion to set the decision in each case aside, and, after judgment was entered upon such decisions, moved to set such judgment aside and to have one judgment entered upon the ground that the foreclosure action and the action by Reynolds to review the order appointing the trust company as trustee constituted but one cause and should end in but one judgment disposing of all the issues in both actions; both these motions were denied, and from the orders denying the same Reynolds appeals to this court, which appeals constitute the third and fourth above-entitled appeals.

Thereafter, and on the 27th day of April, 1895, the said Reynolds made a motion at a Special Term of the Supreme Court for an order directing Gleason, as receiver, to pay the coupons due February 1, 1894, and that upon the payment by him, said Reynolds, of the coupons due August 1, 1894, and on February 1, 1895, the said Gleason, as receiver, deliver the possession of the mortgaged property to said Reynolds, which motion was denied, and from the order denying the same Reynolds appeals to this court, which constitutes the fifth above-entitled appeal.

The history of the entire proceeding having been thus given, so that the situation of all the parties as to each appeal may be fully understood, we will now consider such appeals in their order. *First*, the appeal of Reynolds from the judgment in the foreclosure action and from the judgment in the action seeking to review the order by which the trust company was appointed the successor trustee.

No question was raised upon the trial but what default had been made in the payment of interest upon the bonds, and that such default had continued for a period of over sixty days before the commencement of this action. · No question is raised but that the

trust company represents in fact a large majority of the bondholders, and it appears that upon the hearing before the referee appointed under the interlocutory judgment the plaintiff trust company produced before such referee and had in its custody 271 of the 300 mortgage bonds.

The only questions raised upon the trial and argued upon this appeal by the appellant Reynolds were as to the legality of the appointment of the trust company as successor trustee, which question is common to both actions, and which is the only question presented in the action wherein Reynolds, as receiver, is plaintiff; and as to whether the trust company did in fact legally exercise its option to declare the whole principal amount of the bonds immediately due and payable, pursuant to the terms of the mortgage, after the expiration of sixty days from the default in the payment of interest, which last question only enters into the action for foreclosure.

The plaintiff is properly acting as trustee of the gas company.

The Court of Chancery had jurisdiction of trusts and trustees and had power, independent of any statute, to remove a trustee on good cause shown, and to appoint another in his place.

The Supreme Court has succeeded to the jurisdiction and power of the Court of Chancery, and it seems to me unnecessary to cite authorities to prove its jurisdiction and power to appoint one trustee in the place and stead of another.

The original trustee under the mortgage becoming insolvent, the Supreme Court had jurisdiction to appoint a successor trustee; its order making such appointment was, therefore, not a void order, but may have been, under the circumstances, irregular.

Without discussing the question as to the power and authority of the court in a proceeding pending before it for the dissolution of a corporation, which is acting as a trustee, to appoint a successor trustee, as a part of the proceeding pending before it, I will assume that the original appointment of the New York Security and Trust Company, as successor trustee to the American Loan and Trust Company, was irregular. The orderly and ordinary course of proceeding to dispose of such an order is to appeal from it, or, if the facts upon which it was obtained were falsely stated to the court, to move for a rehearing.

As we have heretofore seen, a motion to vacate the order appointing the trust company as successor trustee was made in another district from that in which such order was granted, and was denied, which denial was affirmed upon appeal to this court.

That was the only proceeding taken by any bondholder to vacate or set aside the appointment of the trust company as successor trustee. From that time forward no bondholder has appeared in these proceedings to contest the appointment of the trust company, or to contest the foreclosure proceedings.

After the commencement of the foreclosure action a motion was made at a Special Term, before the same justice who had appointed the trust company as successor trustee, to vacate such appointment, which motion was denied, and no appeal was taken therefrom. This ordinarily would conclude the matter. But assuming the right in a proper case to have reviewed by action a judgment, decree or order obtained by fraud, in what position does the appellant then stand ?

He alleges as his cause of action that the person upon whose petition such appointment was made falsely represented himself as the owner, or in possession of, or having under his control, bonds of the gas company, and claims that at that time such petitioner neither owned, possessed nor controlled any of such bonds.

In my view of this case, as it now stands, it is a matter of absolutely no importance whether such petitioner owned, possessed or controlled at that time any bonds or not.

The action to vacate the appointment of the plaintiff as successor trustee is one in equity; to sustain it the plaintiff must show some equity existing in his favor. The only persons interested in the question of who shall be trustee under the mortgage are the bondholders and the gas company, all of whom have recognized, acquiesced in and requested such appointment.

The gas company, *first*, by its officers, the president and treasurer, executing to the trust company the so-called supplemental mortgage ; *secondly*, by its board of trustees adopting the resolution, heretofore set forth, designating the trust company as the successor trustee ; and *thirdly*, by paying over to it, from time to time, money to pay the interest upon its bonds. The bondholders, by requesting the trust company to exercise its option and declare the whole principal sum due, and commence foreclosure proceedings upon the mortgage.

Again, in the agreement of the bondholders constituting a committee to act for them, heretofore. referred to, wherein the trust company was designated as their trustee, and in pursuance thereof depositing a large majority of the bonds with it; and still again, upon the motion made at Special Term to vacate and set aside the order appointing the trust company as successor trustee, when the entire committee of bondholders, by separate affidavits, requested the Special Term to deny such motion, and to continue the trust company as successor trustee.

Upon the trial, as we have seen, the trust company produced before the court 271 of the 300 bonds issued under the mortgage, and under such circumstances, where it is so evident that the plaintiff is acting for and on behalf of a vast majority of the bondholders, I do not think that a court of equity will, at the instance of one who represents neither the mortgagor nor the mortgagee, nor any of the bondholders under the mortgage, interfere because of any alleged irregularity in its appointment of a trustee which is acting at the request and by the consent of all the parties interested.

A stranger not interested cannot raise any question as to the want of jurisdiction of the court appointing a trustee or as to the regularity of the proceedings. (*People* v. *Norton,* 9 N. Y. 176; *Matter of Livingston,* 34 id. 555–570.)

As to the exercise of the option to declare the principal sum due, the majority of the bondholders requested the trust company to exercise such option. The contention is made that the trust company did not legally comply with that request; that the notice sent by the secretary of the company to the gas company was not sufficient, it not appearing that he was authorized so to do by a resolution of the board of directors of the trust company. I am inclined to think that no such resolution was necessary, that it was a matter that called for no deliberation or action upon the part of the directors, but that it was a mere executive duty which the executive officers of the trust company could perform in the ordinary discharge of their duty. By the terms of the mortgage the request of the bondholders was conclusive and mandatory; but, be that as it may, the bringing of the suit itself was a sufficient declaration of its intention to exercise such option. (*Northampton National Bank* v. *Kidder,* 106 N. Y. 221.)

And no question is raised here but what the action was commenced in the name of the trust company by proper authority.

But, in addition to that, there was produced and given in evidence upon the trial a resolution of the board of directors of the trust company ratifying and approving the action of the secretary in giving notice that the trust company exercised the option in question. It is true that this resolution was passed after the commencement of the action and during the trial thereof, but, nevertheless, I think it was a sufficient confirmation of the action of the secretary to sustain and make good the position of the trust company, if any such resolution was at any time necessary, to authorize the secretary to act. What should have been done only by their authority, having been done without such authority, they may at any time ratify.

The contention of the appellants, the bank and Andrews, that the lien of their judgments, execution and sale be declared liens prior to the lien of the mortgage, I do not think should be sustained.

The gas company was organized under chapter 40 of the Laws of 1848, entitled " An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," passed February seventeenth. By chapter 163 of the Laws of 1878 all corporations organized under chapter 40 of the Laws of 1848. and the acts amendatory thereto, were authorized to mortgage "all or any part of the goods and chattels of such corporation, and also the franchises, privileges, rights and liberties thereof."

By chapter 481 of the Laws of 1871, companies organized under such acts aforesaid, were authorized to mortgage all or any part of the real or personal property of such corporation.

Under these statutes the gas company had power to execute the mortgage in question.

Chapter 171 of the Laws of 1891 provides that " It shall not be necessary to file as a chattel mortgage any mortgage which has been, or shall hereafter be, executed by any telegraph, electric light or telephone company upon real and personal property, and which has been or shall be recorded as a mortgage," etc.

This statute, I think, includes the gas company ; being a gas and electric light company, it properly comes under the words : "*Any * * * electric light * * * company.*"

The mortgage being recorded in the proper county, it was notice

to all persons as to the personal property as well as to the real estate.

I am not prepared at this time to assent to the doctrine that mortgages of the kind in question here do not extend to after-acquired personal property. It seems to me that the principle established in *Rochester D. Co.* v. *Rasey* (142 N. Y. 570) is not applicable to mortgages of the kind here under consideration.

Enterprises like that of the gas company commonly require too much capital to be carried on by a single individual; a partnership is not adapted to conduct such undertakings; it requires an aggregation of capital and a method of business which is best secured by a corporation; the accepted manner of raising the greater portion of the needed capital is by an issue of bonds, secured by a mortgage upon the franchise, real estate and business plant and property of the corporation. These bonds and mortgages are ordinarily, and almost necessarily, long term bonds and mortgages; those in question here are payable twenty years from date of their execution.

Frequently the most valuable portion of their property does not consist in the land owned by them and the buildings erected thereon, but in the implements and machinery necessarily used in carrying on the business. In the natural course of business, during the long term of the bonds and mortgage, much of such machinery, implements and tools becomes worn out and must be replaced; then, too, there is a constant improvement in machinery, better and cheaper methods are devised, but which demand new and different machinery; the machinery that is from time to time put in in place of that which is worn out, the new machinery that supersedes the old, in order to adapt the plant to modern processes and methods, become an essential part of the plant; and such renewals and additions, I think, may fairly be said to be contemplated when any large enterprise of the kind I have been discussing is inaugurated, and may fairly be said to be part of the security contemplated when investors are asked to advance their money in aid of such undertakings; otherwise, the longer the business continues, the more enterprise that is exhibited in adopting new methods and devices, the less the security of the investors becomes, unless every time a tool, implement or piece of machinery becomes worn out and a new one is put in its place, or where a piece of improved machinery is put in place of an old one,

which it supersedes, new bonds and a new mortgage is given to the
bondholders. That is obviously impracticable. In the interest, as
it is said, of trade and commerce a liberal rule in favor of the
tenant has been adopted, as between landlord and tenant, in the
question of what additions to leased property made by the tenant
become fixtures.

So, in the interest of commerce and manufactures, a liberal rule
as to bondholders and mortgagees should be adopted as to after-
acquired personalty that becomes a necessary or proper part of the
mortgaged plant. It has been held that after-acquired real estate
can be mortgaged. (*Carpenter* v. *Black Hawk Gold Mining Co.*,
65 N. Y. 43 ; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284;
*Stevens* v. *Watson*, 4 Abb. Ct: App. Dec. 302.)

When real estate is conveyed to the mortgagor the lien of the
mortgage, which before that time remained but an equitable
claim upon the property to be acquired, becomes a vested legal
right to such subsequently acquired realty. (*Fisk* v. *Potter*, 2
Abb. Ct. App. Dec. 138–144.)

In the case of *Seymour* v. *C. & N. F. R. R. Co.* (*supra*), where
the question was whether real estate acquired by a railroad corpora-
tion, after the execution of a mortgage, was within the lien of such
mortgage, the court said that it was entirely "immaterial whether
the right of way for the railroad was all acquired or not at the
time the mortgage was put on record, and it is equally immaterial
whether the road had or had not been at that time entirely located,
or the location thereof, if previously made, was afterwards changed."

That case was approved in the case of *Carpenter* v. *Black Hawk
Gold Mining Co.* (*supra*). The mortgagor in that case was organ-
ized under the same act that the gas company in this case is, and
the court said of the mortgage given by it, that " It is not in con-
flict with the statute, because it mortgaged the future as well as
present real estate of the company. There is nothing in the statute
which limits the effect of the mortgage to the present real estate of
the company, and nothing in the nature of a mortgage security
which can thus limit its effect." (65 N. Y. 51.)

I can see no difference in principle between mortgages of this
nature upon the realty from those given upon chattels.

The power to mortgage the personal property is under the

same statute that authorizes the mortgaging of realty. Creditors and persons dealing with the company have the same notice of the mortgage of the personalty that they have of the mortgage upon the realty. Chapter 171, Laws of 1891, above quoted, renders the recording of a mortgage of the kind in question, including both real estate and personal property, equivalent, so far as the personal property is concerned, to the filing of a chattel mortgage upon the same property.

It seem to me, therefore, that unless some third person has acquired a lien upon such property, prior to its acquisition by the gas company, as soon as the gas company became possessed of it, it became subject to the lien of the mortgage.

If I am mistaken, however, as to that aspect of the case, there is another which I think must dispose of the appeal of the bank and Andrews. Their contention, it will be borne in mind, is that their judgments and executions should be declared liens, prior to the mortgage, upon all after-acquired property.

The mortgage by its terms covered all the property of the gas company and all property to be thereafter acquired. As to after-acquired property, I take it that there is no occasion to cite authorities to show that, as between mortgagor and mortgagee, at least, it was valid.

Upon the face of the mortgage then the trust company was entitled to foreclose all the property in the possession of the gas company at the time of the foreclosure. The appellants, the bank and Andrews, by their answers, claim a lien prior and superior to that of the mortgage; they allege that they have such a lien because the property levied upon by them was purchased after the execution of the mortgage; it was incumbent upon them to prove that allegation, and if the fact that any part of it was after-acquired property, was an essential element to establish the priority of the lien claimed by them, it was incumbent upon them to establish that fact; their mere assertion of their claim in their answers was not sufficient to place the burden of proof upon the trust company to show that all the property in the possession of the gas company was in its possession at the time of the execution of the mortgage.

There is no evidence that any of the property upon which the bank and Andrews claim that their judgments or executions and

sale should be declared liens, prior to that of the mortgage, was purchased after the execution of the mortgage, except the dynamos and exciters. Dynamos and exciters are essential in the manufacture of electricity. They were placed in the building used by the gas company for the manufacture of electricity as a part of the electric plant. It appears that the dynamos weighed about two tons each; that they rested upon special foundations upon which were sliding grooves, in such form that a dynamo could be slipped out and another of the same size slipped in; they were fastened to the floor by screws. Each dynamo was joined by a large leather strap to the shaftings. The floor of the building could be removed without disturbing the dynamos.

The exciters weighed about 500 pounds each, and were fastened in the same way that the dynamos were, except that there was no special foundation built for them. It was the intention in placing these dynamos and exciters in the building to keep them there until they were worn out or superseded by others.

The fact that a piece of machinery can be taken out of a building without impairing the construction of the building, does not determine the question as to whether it has become part of the real estate. The question is, was it the intent to place it there, as a permanent improvement, an addition to the freehold, to be applied to the property and to the use of the businesss there carried on? (*Potter v. Cromwell*, 40 N. Y. 287; *Voorhees v. McGinnis*, 48 id. 278; *McRea v. Central Nat. Bank of Troy*, 66 id. 489.)

The case of *Potter v. Cromwell* (*supra*) was one where a portable grist mill was placed in a building theretofore used as a tannery. It could be removed without impairing the structure of the building. It was no more firmly or permanently attached to the realty than the dynamos and exciters in this case. It could be removed without impairing the structure of the building. It was placed in the building for the purpose of being used as a permanent structure for a custom grist mill for the neighborhood; it was held to have been part of the realty.

In *Davidson v. Westchester Gas Light Company* (99 N. Y. 558) it was held that so much of the tools, implements and machinery in question as were attached to, and had become essential to the use of, the building and machinery erected upon the mortgaged property,

for the purpose of manufacturing illuminating gas, had become thereby a part of the realty, subject, upon annexation, to the lien of the mortgage.

In the case before us we have a corporation whose franchise is to enable it to manufacture and dispose of gas and electricity, with land, upon which are buildings used for the purpose of manufacturing gas and electricity and distributing it. In these buildings have been placed pieces of machinery of the kind that are essential in the production of electricity, placed there with the intention of their remaining there until worn out, or, in the expression used, "superseded," by which I take it was meant until, in the progress of invention, better and more suitable machinery should be produced. They thereby became part of the permanent plant of the company, proper and necessary for it to have in order to carry on its corporate business. It seems to me, therefore, that, within the principles of the cases above cited, these machines became a part of the realty mortgaged.

The property of the gas company that has been used, disposed of and sold by the gas company, since the execution of the mortgage, as set forth in the answer of the bank and of Andrews, the value of which they allege should, as against them, be credited upon the amount of such mortgage, appears to have consisted of coal, oil, lime and articles of that character, which were used in manufacturing gas and electricity, and renewed from time to time 'in carrying on the business of the corporation. The moneys expended appear to have been expended for the purchase of supplies, repairs to the building and plant, and the general expenses of conducting the business. It is hardly worth while spending time upon the contention that is made, that such use and sales of property and expenditure of moneys should be credited upon the mortgage, as made in fraud of creditors.

As was stated in the court below, the question " whether a mortgage is fraudulent against creditors is a question of fact." And again, " every case must stand upon its own facts, and the test of fraud in such cases is whether the mortgaged property is really devoted to the creditor's security."

It is not pretended here that this was any scheme by which the gas company, under the shield of a mortgage, was to be permitted

to dispose of its property for its own profit in fraud of its creditors; no question is raised but that the mortgage was actually given for the security of the bondholders. Such being the case, the rule that is invoked, that where mortgaged property is permitted by the mortgagee to be used or appropriated by the mortgagor, it shall, as against other creditors of the mortgagor, be credited upon the mortgage for the reason that then the security of the bondholders is lessened, ultimately leaving less for other creditors, I do not think can be applied to corporate mortgages like the one in question, where such appropriation and use of property and expenditure of money is made in the course of the corporate business, the articles used up or worn out replaced by others, the moneys expended necessarily expended in keeping the business alive and to produce a revenue, and without which use of property and expenditure of money the corporate business would cease and no revenue could be derived with which to pay the interest upon the mortgage or other debts of the corporation, and but for which it would cease to have any active existence. By such use of the corporate property and expenditure of money the value of the corporate property is enhanced or at least kept good, which is for the benefit of all creditors of the company, whether mortgage creditors or others. To hold to the contrary would greatly impair the value of long term bonds secured by mortgage upon real and personal corporate property, as authorized by statute, and would not upon the whole be for the benefit of other creditors of such corporation.

The appeals from the orders denying the motions to vacate the judgments entered as above stated, and direct the entry of a single judgment embracing both actions, are next to be considered.

These motions were founded upon the assumption that a cross-action as known to the old Chancery practice still exists. The argument to that effect was predicated upon section 217 of the Code of Civil Procedure, which states that the general jurisdiction formerly possessed and exercised by the Supreme Court of the colony of New York at any time and by the Court of Chancery of England on the 4th day of July, 1776, is now vested in the Supreme Court with such exceptions and limitations as have been created and imposed by the Constitution and laws of the State. And that, "subject to those exceptions and limitations, the Supreme Court of

the State has all the powers and authority of each of those courts, *and exercises the same in like manner.*"

By the words "exercises the same in like manner" I do not think it can be held that a cross-action with the forms and procedure relative thereto has been preserved, because by the old Code of Procedure all forms of action, both legal and equitable, theretofore existing were abolished, and by section 518 of the present Code of Civil Procedure it is provided that the chapter of which that section forms a part prescribes the forms of pleadings in all actions, and the rules by which the sufficiency thereof is determined, except where special provision is otherwise made by law. Section 3339 provides that there shall be but one form of action, abolishes the distinction between actions at law and suits in equity and abolishes all forms of action at law and suits in equity.

While the jurisdiction of the old Supreme Court and of the Court of Chancery has been vested in the present Supreme Court, and while all remedies, both in law and equity, have been undoubtedly preserved, the method of procedure by which that jurisdiction shall be exercised, and the remedies pursued, have been entirely changed, and are now to be found in the Code of Civil Procedure or in the rules of court.

Decisions as to former rules of practice and procedure, while they may be valuable as shedding light upon similar procedure provided for in the present Code, or in the rules of practice, or as guides where such codes and rules have failed to definitely prescribe in some particular the practice to be followed, are no longer precedents in questions of practice except to the extent I have stated.

The case of *Simpson* v. *McKay* and *McKay* v. *Simpson* (3 T. & C. 65), relied upon to sustain the motion to vacate and consolidate, I do not think sustains the contention of the appellant.

As I understand it, a cross-suit is not maintainable where the relief sought can be obtained in the first action.

It is more than doubtful as to whether the case of *McKay* v. *Simpson* was properly a cross-action or could have been sustained as such if challenged; the parties to both actions were identically the same, and the remedy sought in the second action was one that could apparently have been obtained in the first.

The court said: "The defendants, Alexander and Robert

McKay, brought the cross-action claiming to be allowed payments and set-offs omitted in their answer in the former suit. Why this end was not sought to be attained by an amended or supplemental answer, rather than by cross-action, is not obvious." And further on in the opinion the court said : "The trial embraced the subject-matter of both actions. The matter of the cross-suit was but a defense to the original action, and, therefore, the original cause and the cross-suit constituted but one action."

Where the cross-suit is really nothing but an answer or defense, which could have been asserted by answer in the first action, and where both, as was said in the *McKay* v. *Simpson* case, "constituted but one action," and where the parties are the same, as in that case, a single judgment may be proper. But that is not this case.

Here the cause of action set forth in the so-called cross-suit did not constitute a defense to the original action, and was confessedly brought because it was not a defense to the cause of action set out in the first action, neither are the parties to both actions the same.

Again, in that case the original action was commenced in the Court of Chancery in 1843, some years it will be observed before the merger of the Court of Chancery in the present Supreme Court, and before the distinction between actions at law and suits in equity were abolished, and before the abolition of the old forms of procedure. These differences, without adverting to others, between the case of *Simpson* v. *McKay* and the one at bar, seem to me sufficient to destroy it as a controlling authority in this case.

The actions now being considered are separate and distinct; the relief sought in one cannot be asserted as a defense in the other; the parties to the record are not the same in each.

Ordinarily, where separate actions are brought, each proceeds to an appropriate judgment upon the record.

There may be cases, where an action is brought to restrain the prosecution of another then pending, and where the relief prayed for is granted, in which a single judgment, to wit, a judgment restraining the further prosecution of the first action, is proper ; there the relief that has been granted is of such a nature as to render the prosecution of the first action to judgment impossible in law.

The second action in such a case having, by the affirmative relief that has been granted, swallowed up, or superseded the first; but

no such result will follow in the event of such second action being unsuccessful ; then, it seems to me, there would be an obvious propriety in entering up a judgment dismissing the complaint in the second action, and permitting the first action, the prosecution of which it had been sought to restrain, to proceed, in the regular and usual method of procedure, to final judgment.

It may be that such an order would have been proper here had the plaintiff Reynolds succeeded in his cross-suit, although I do not feel clear in that regard ; but having failed in securing the affirmative relief sought by him, I can see no reason why each action should not proceed to judgment the same as other actions. As a matter of convenience, it may be proper where cases are practically tried together as these were, the evidence in one being taken as evidence in the other, that a single decision and order for judgment in both cases should be rendered, but on such decision and order separate judgments should be entered in order that the record in each case may be complete in itself.

As to the appeal of Reynolds from the order denying the motion to direct the receiver Gleason to pay certain coupons, and upon the payment by said Reynolds of the remaining coupons, to turn over all the property of the gas company in his possession to 'said Reynolds, it seems to me that such motion was properly denied. No question was raised upon this appeal, but that the appointment of a receiver in the foreclosure proceeding to preserve the property and receive the profits for the bondholders, was within the power and discretion of the court. The order appointing Gleason receiver seems to have never been questioned or appealed from. The motion to discharge him and to turn over the property in his possession to a receiver appointed in a sequestration proceeding was one largely in the discretion of the court at Special Term to grant or refuse. Each of these receivers is an officer of the court, acting for it, and in its place and stead. Each is simply the instrument of the court to guard, protect and manage for it the property and interests which are in its custody and control. The discretion of the court as to which receiver should have the future control of the property was exercised after a review, probably, of all the proceedings in this matter, as they have been herein set forth, the motion having been heard by the same justice before whom the actions were tried. The

motion was made after the final judgment and decree of foreclosure and sale, in the foreclosure action, and after the receiver Reynolds had been beaten in his efforts to defeat such action, and there is nothing before the court to show that any person interested would be benefited by granting such order, except the receiver Reynolds, who would thus have placed in his possession a large amount of property upon which he might be entitled to receive a percentage. No abuse or mismanagement is shown on the part of Gleason, and, in fact, I can see nothing in the record that in any way shows that the court below did not properly exercise its discretion when it refused to grant the motion which would practically remove Gleason from the receivership, and place the property in the control of one, who from the record before us, seems to have vexatiously delayed the bondholders in securing their rights under the mortgage given to protect them, and who has unnecessarily increased the expenses of the proceedings they were compelled to take to enforce and protect such rights.

The number of questions to be considered in these appeals and the length to which their consideration would necessarily extend, have precluded me from entering upon any discussion of many of the authorities cited in the learned and ingenious briefs of counsel, and I have, therefore, largely confined myself to an expression of the conclusions at which I have arrived after considering the authorities referred to.

The views herein expressed lead to an affirmance of the judgments and orders appealed from, with costs of the appeals wherein Reynolds, as receiver, is appellant, against said Reynolds personally.

MAYHAM, P. J., concurred; PUTNAM, J., not acting.

In first above-entitled action judgment affirmed, with costs and disbursements.

In second above-entitled action judgment affirmed, with costs and disbursements.

In third above-entitled action order affirmed, with ten dollars costs and disbursements, to be paid by Reynolds personally.

In fourth above-entitled action order affirmed, with ten dollars costs and disbursements, to be paid by Reynolds personally.

In fifth above-entitled action order affirmed, with ten dollars costs and disbursements, to be paid by Reynolds personally.