## Case No. 4,864.

FLETCHER et al. v. MOREY.

[2 Story, 555.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

[1] [Reported by Samuel H. Hempstead, Esq.]

[1] [Reported by William W. Story, Esq.]

B. R. Curtis and C. P. Curtis, for plaintiffs.

Francis C. Loring, for defendant.

STORY, Circuit Justice. It does not appear to me that there is any real difficulty in the present case. The bill asserts an equitable lien against certain shipments, and the proceeds thereof, in the hands of Mr. Morey, as assignee in bankruptcy of Messrs. Read & Co., under an agreement stated in the bill, and admitted by the answer. as security for advances made by the plaintiffs under the

same agreement. I say under the agreement, because, although the acceptances and advances were, in fact, made after the time stipulated in the renewed agreement for a prolongation of the original credit (in which I suspect the words "from its date" are inserted by mistake instead of "from this date"); yet it is agreed by the parties in the additional statement introduced into the case, that, in point of fact, the parties on both sides acted upon the supposition that the renewed agreement actually covered these very acceptances and advances, and that the terms of the original and renewed agreements were fully intended to apply to all the shipments made in precisely the same manner and to the same extent, as if they had been positively included therein. Under such circumstances, in a court of equity, the case stands precisely in the same predicament as if the written agreements did cover them; for, in equity, that is deemed to be done, which the parties intended to do, and which ought to be done.

Now, before proceeding to the points more directly in judgment, it is proper to remark that it is a perfectly well settled principle in equity, that the assignee in bankruptcy takes the property and rights of the bankrupt in the same plight and condition, and with all the equities attached thereto, in the same manner as the bankrupt himself held them. I recollect at present but one exception to the doctrine, and that is in the case of fraud. The general rule was laid down by Lord Hardwicke in Brown v. Heathcote, 1 Atk. 160, 162, and it has been constantly adhered to ever since. I need not cite the authorities at large. Many of them will be found referred to in a recent opinion, which I had occasion to deliver in the case of Mitchell v. Winslow [Case No. 9,673] at the last October term of the circuit court at Portland. See, also, 2 Story, Eq. Jur. §§ 1224, 1411.

This then being the established principle, the first question which arises in the case, is, whether there is any equitable lien, or right, or claim, under the agreement, which ought to be enforced specifically in equity against the shipments made to and for Messrs. Read & Co., or the proceeds thereof, so far as they can be distinctly traced in the hands of the assignee: and upon this point, I entertain no doubt whatsoever. In equity there is no difficulty in enforcing a lien or any other equitable claim, constituting a charge in rem, not only upon real estate, but also upon personal estate, or upon money in the hands of a third person, whenever the lien or other claim is a matter of agreement, against the party himself, and his personal representatives, and against any persons claiming under him voluntarily, or with notice, and against assignees in bankruptcy, who are treated as volunteers; for every such agreement for a lien or charge in rem constitutes a trust, and is accordingly governed by the general doctrine applicable to trusts. The cases of Farr v. Middleton, Finch, Prec. 174, 175; Collyer v. Fallon, 1 Turn. & R. 469, 475, 476; and Legard v. Hodges, 1 Ves. Jr. 478,— are fully in point. In the case of Collyer v. Fallon, 1 Turn. & R. 469, Sir Thomas Plumer (the master of the rolls) said, "The argument on his side (the plaintiff's) has been, that whenever parties contract with respect to a subject-matter, that subject-matter is thereby bound. I assent to the principle when rightly understood; but it is a principle which must be received with qualifications. Contract with respect to a given matter binds the property as between the parties to the contract; but it does not affect the rights of third persons, or bind the property in reference to any claim which they may have upon it, unless they either have notice, or are volunteers. This limitation of the proposition is stated explicitly by Lord Loughborough in the very passage which was relied on (1 Ves. Jr. 478). 'Whatsoever,' says he, 'is the agreement concerning any subject real or personal, though in form and construction merely personal and suable only at law, yet, in this court, it binds the conscience;' that is to say, the conscience of the parties to the agreement, and of those who claim under them, either with notice or without consideration. For his lordship adds: 'This maxim I take to be universal, that, wherever persons agree concerning a particular subject, that in any court of equity, as against the party himself, and any claiming under him voluntarily or with notice, raises a trust.'" See, also, 2 Story, Eq. Jur. §§ 1228, 1229, 1231, 1249, note. So that, as a matter of trust directly growing out of, and provided for by, contract, the present case falls directly within the principle above stated. The goods and the proceeds thereof are expressly, by the agreement of the parties, "pledged and hypothecated" as collateral security for the advances. But then it is suggested, that in the proviso of the second section of the bankrupt act of 1841, c. 4, there is no saving of any liens, except such as are valid by the laws of the state respectively; and it is added that, by the laws of Massachusetts, where the bankruptcy took place, no equitable lien exists, or can be enforced in cases of this sort. My opinion is that the terms of the proviso in the second section embrace all liens, equitable as well as legal, which are valid by the state laws. I am yet to learn, that an equitable lien may not exist in Massachusetts, and is not valid between the parties in this state. It is no answer to say, that no remedy is provided for the enforcement of such liens by the state jurisprudence in the state courts. That does not show, that no such liens exist; for many cases of acknowledged trusts no remedy at present exists in the courts of this state; but that does not show, that they have no existence or validity. Trusts in assignments, and in last wills and testaments,

and equitable rights, growing out of partnerships, were, until a comparatively recent period, without any means of being enforced in the state courts of this state. But has any one ever doubted, that, by the law of Massachusetts, such trusts were always valid? There is not, I believe, any remedy now in the state courts to enforce the lien of a vendor for the purchase money of an estate sold by him, even when expressly stipulated for; but yet in Gilman v. Brown [Case No. 5,441]; Id., 4 Wheat. [17 U. S.] 255, the supreme court entertained no doubt, that such a lien, when express or implied, was valid, and might be enforced in the courts of the United States possessing equity jurisdiction, although not remediable in the state courts. In short, it has been long since settled in the courts of the United States, that the equity jurisdiction and equity jurisprudence administered in the courts of the United States are coincident and coextensive with that exercised in England, and are not regulated by the municipal jurisprudence of the particular state, where the court sits. This was expressly decided in Robinson v. Campbell, 3 Wheat. [16 U. S.] 212, 220, and U. S. v. Howland, 4 Wheat. [17 U. S.] 108.

But the proviso in the second section of the bankrupt act of 1841 does not limit the rights of parties to the liens created and supported by the laws of the states. It merely recognizes and preserves their validity. It was by no means intended to affect any of the equitable liens or other equitable claims of parties arising under their contracts, where the contracts themselves were, by the lex loci contractus, valid; as there can be no question, that this was, as between the parties themselves. The fullest jurisdiction is given by the bankrupt act both in the district court and the circuit court, in equity, in all matters touching the bankruptcy; and, of course, that jurisdiction must be, and is to be, exercised according to the general principles applicable to courts of equity. The objection, therefore, is untenable. Assuming, that the state courts have no power to enforce the lien, or equitable claim or charge arising under the present agreement, it is still capable of being specifically enforced in this court under its general equity jurisdiction, as well as under its particular jurisdiction conferred by the bankrupt act of 1841, c. 6, § 8. It is a valid agreement between the parties, and not prohibited by the laws of Massachusetts.

But it is said, that the agreement, if enforced, will operate as a fraud upon the creditors of Reed & Co. under their bankruptcy; and indeed, that an agreement of this sort, so far as respects creditors, is void, as against the policy of the law, and in derogation of the rights of creditors. Now, it is not pretended, nor even suggested, that any fraud was, in fact, contemplated by the parties, or any of them, upon the creditors. The transaction was bonâ fide, for a valuable consideration, and for future advances, to promote the commercial business of the firm of Read & Co., and not to withdraw any of their existing funds from their creditors. No insolvency or bankruptcy, or failure in business was then contemplated by either of the parties. It was as fair and honest a commercial transaction, in its origin, and progress, and consummation, as was probably ever entered into. How, then, it is against the policy of the law, I confess myself unable to perceive, unless we are prepared to say, that taking collateral security for advances, upon existing or future property, on the part of a creditor, without taking possession of the property at the same time, or when it comes in esse, is per se fraudulent. Possession is ordinarily indispensable at the common law to support a lien; but even at the common law, it is not absolutely indispensable in all cases. This is shown by the recent case of Dodsley v. Varley, 12 Adol. & E. 632, where goods had been sold and deposited in the warehouse of a third person for the vendee; but still it was understood between the parties, that the vendee was not to remove them, until payment therefor; and it was held by the court, that, although the warehouse must be considered as the vendee's warehouse, and he in the actual possession of the goods, yet, "consistently with this, the vendor had, not what is commonly called a lien determinable upon possession, but a special interest, sometimes, but improperly, called a lien, growing out of the original ownership, independent of the actual possession, and consistent with the property being in the vendee." What is this, but allowing the existence of an equitable lien, notwithstanding the possession of the goods is parted with, good between the parties, and good as to all persons, not claiming under the vendee, as bona fide purchasers for a valuable consideration without notice? But I take it to be clear, that not only liens, but mortgages of personal property are perfectly good and supportable between the parties, and against creditors, where there is no fraudulent intent, and the possession remains in the owner or mortgager of the property, and is consistent with the deed and the arrangements made between the parties. That was one of the points decided in the case already alluded to, of Mitchell v. Winslow [supra]. There is a long line of authorities, that in cases of sales of personal property, conditional or absolute, the transfer or conveyance is not void, even though the possession remains with the vendor, if that possession is consistent with, and a part of, the arrangements intended by the parties in the transfer or conveyance. So that the possession of the property by Messrs. Read & Co., in the present case, is not, in my judgment, a badge of fraud, or against the policy of the law, or in any manner to be deemed inconsistent with the just rights of their creditors; and, therefore, the agreement is binding and

valid to give a lien or equitable charge upon the property in the hands of the assignee, fit to be enforced in the present suit.

In respect to the other point, suggested at the bar, whether the duties, paid by Messrs. Read & Co. upon the importation of the goods, are to be allowed for and deducted from the value thereof, or of the proceeds in the hands of the assignee, there does not seem to be any ground for the deduction; at least not, unless in respect to such goods, if any, as came into the assignee's hands charged with those duties, since the bankruptcy. The goods previously imported by Messrs. Read & Co., and the proceeds thereof, were to be chargeable with the advances; and it seems to me, that the intention of the parties was, that Messrs. Read & Co. should exclusively bear all the charges of their own importation under the agreement, the duties, as well as the freight and other charges.

These, I believe, are all the points, which it is necessary to notice in deciding the present case. A decree will be entered accordingly for the plaintiffs; and, if necessary, it will be referred to a master to ascertain the amount due to the plaintiffs, and the amount of the property or its proceeds now in the hands of the assignee, which is affected by the equitable lien or charge, growing out of the agreement.