## INTERNATIONAL PAVEMENT CO. v. RICHARDSON.

(Circuit Court, E. D. Pennsylvania. June 20, 1896.)

PATENTS—LICENSES—RESTRICTIONS ON TITLE TO MACHINES.

It is competent for a licensee who has purchased and is operating patented machines under the license to restrict his title and ownership therein by a new contract of license, made upon a sufficient consideration, and containing a condition or stipulation that he shall have no title or interest in the machines which can be sold or assigned without the consent of the licensor, except to some other licensee; and any one purchasing such machines with knowledge of the license takes them subject to the condition, so that the same may be enforced against him by the licensor.

This was a suit in equity by the International Pavement Company against Benjamin F. Richardson to restrain him from using or disposing of two patented machines, in violation of the covenants and conditions of a certain contract of license.

Strawbridge & Taylor, for complainant.
Hector T. Fenton and E. Hunn Hanson, for defendant.

ACHESON, Circuit Judge.    By a contract in writing between the International Pavement Company (the plaintiff in this suit) and the Trinidad Asphaltum Block Company, dated August 14, 1893, and duly executed by the parties thereto, the former-named company granted to the latter-named company an exclusive license to use the improvements patented in 11 named letters patent of the United States, and each of them, in the manufacture, sale, and use of compressed asphalt paving and building blocks and tiles within the counties of Philadelphia, Delaware, Chester, Lancaster, and York, in the state of Pennsylvania, for the period of 17 years from July 12, 1892, unless sooner terminated for breach of condition, as therein provided.    This contract of license contains the clause following:

This license shall not be transferable or assignable by the said party of the second part without the consent in writing of the said party of the first part, duly authorized by a vote of its board of directors, and indorsed hereon; and the said party of the second part shall have no interest in the patented machines that it is by this contract of license licensed to procure and use, or in the machines covered by said letters patent which are now owned by it, or have been used and operated by the party of the second part under any prior license from the party of the first part. which it can use and operate as constructed and operative machines, except under and pursuant to this contract of license, and while the same remains in force; and that said party of the second part shall have no interest in said patented machines which, as constructed and operative machines, can be assigned, sold, or in any manner transferred, without the written consent of the said party of the first part, duly authorized by vote of its board of directors. And, apart from said contract of license, the title to said patented machines shall be merely as raw metals or materials in the possessor's hands; provided, however, that the said party of the second part may at any time sell said patented machines to any persons or parties who may have a license from the International Pavement Company to use the same, to be used and enjoyed by such purchasing licensee, subject to all the terms, restrictions, limitations, and conditions in such purchasers' license from the International Pavement Company contained.

One of the patents named in and covered by this license is patent No. 289,397, granted to Augustus Dietz on December 4, 1883, for an "improvement in machines for the manufacture of bricks out of asphalt." The plaintiff, in the year 1886, duly acquired the exclusive right of making, using, and vending, and licensing to others to be used, machines under the said Dietz patent. On June 8, 1886, the plaintiff granted to the Trinidad Asphaltum Block Company an exclusive license to use the Dietz patent in a portion of the state of Pennsylvania and other contiguous territory. There were then in existence two, and only two, machines embodying the Dietz patented improvement, one of which machines was owned by the Trinidad Asphaltum Block Company, and the other by another company. The latter-mentioned machine was bought afterwards by the Trinidad Asphaltum Block Company, and that company used these two machines under the license of June 8, 1886, and paid the plaintiff royalties thereunder upon all blocks manufactured on these machines. On August 14, 1893, the license of June 8, 1886, was canceled by the mutual consent of the parties thereto, and the above-recited license of August 14, 1893, was executed.

By an agreement in writing dated and executed April 9, 1894, between John Farr, as party of the first part, and Benjamin F. Richardson (the defendant in this suit), as party of the second part, it was agreed as follows:

The said party of the first part agrees to sell and convey to the said party of the second part, who agrees to purchase, the plant and good will of the Trinidad Asphaltum Block Company, including the contract of license from the International Pavement Company, for the price or sum of seven thousand two hundred and fifty dollars, * * * on the terms and conditions following, to wit: ·The said John Farr agrees to transfer the above property free from all liens to have said contract of license regularly and legally transferred. and the said transfer accepted by said the International Pavement Company. * * *

Farr, who was a judgment creditor of the Trinidad Asphaltum Block Company, and was to receive the proceeds of said sale, entered into the agreement of April 9, 1894, with the consent of the president of the Trinidad Company, and that company afterwards ratified the sale. On April 30, 1894, the defendant, his legal adviser, Mr. Ross, Mr. Farr, Mr. Wattson, president of the Trinidad Company, and Mr. Wilkinson, the president, and Mr. Upham, the treasurer, of the International Pavement Company, met together, and, after some negotiations, Messrs. Wilkinson and Upham gave to the defendant the following memorandum:

Upon the execution and delivery of a covenant by Benjamin F. Richardson, of Norristown, Montgomery county, Pennsylvania, to the Block and Tile Paving Company of New Jersey to pay said company one-quarter of one cent on each and every asphalt block and tile sold by said Richardson in York, Lancaster, and Delaware counties, in the state of Pennsylvania, during the existence of the license hereinafter mentioned, the International Pavement Company will consent to the transfer of its license to the Trinidad Asphaltum Block Company by said last-mentioned company to the said Richardson. Said payments to be made half-yearly by said Richardson to said Block and Tile Paving Company. It being understood that the existing contract between the Trinidad Asphaltum Block Company and the Block and Tile Paving Company,

providing for the payment of three-fourths of a cent on excess, etc., shall first be delivered up and canceled.        Walter S. Wilkinson, President.
Dated April 30, 1894.        George B. Upham, Treasurer.

The defendant verbally agreed to execute the proposed covenant as soon as a contract in proper form could be prepared, and the sale to the defendant was then carried out by the Trinidad Asphaltum Block Company by its deed dated May 1, 1894. This deed, after reciting a resolution of the board of directors of the company adopted April 16, 1894, and a resolution of the stockholders of the company adopted April 30, 1894, authorizing the sale of the company's "plant and license for patents" to the defendant, for the consideration named in his contract with Farr, conveyed to the defendant the property of the company, described as "mainly consisting of plant and machinery" (situate on certain named leased ground), "and including also the contract of license from the International Pavement Company." The defendant forthwith took possession of the plant and machinery, and, with the acquiescence of the plaintiff, entered upon and continued the manufacture of asphalt blocks by the use of the two Dietz machines, advertising himself as "successor to Trinidad Asphaltum Block Company"; and in the months of July and October, 1894, the defendant made the returns to the plaintiff, and paid to it the royalties as stipulated in said license. The defendant, however, neglected to execute the contract with the Block & Tile Paving Company, as he had verbally agreed to do; and he failed to report the number of blocks manufactured by him under said license during the quarter ending December 31, 1894, or to pay the stipulated royalties thereon; and the plaintiff, in accordance with the provisions of said license, on or about February 27, 1895, by a written notice served on the defendant, canceled the license.

The purpose of this bill is to restrain the defendant from using or disposing of the said two machines constructed under the Dietz patent, in violation of the covenants, conditions, limitations, and restrictions of the contract of license of August 14, 1893. There is no reason to doubt that the above-quoted clause of the license contract was intended to include, and actually did include, the two Dietz machines. They are within the language employed, and the evidence dehors the paper shows that it was the understanding of the parties that they were covered thereby. Now, if it be true that these machines had once passed out of the monopoly, yet the owner of them could waive the immunity, and bring them again within the operation of the patent. As the Trinidad Company was at liberty to divest itself of its whole title in and to these machines, and to put the entire title in the plaintiff, so it was its right to restrict its ownership. No rule of public policy forbade the owner to do this. Mitchell v. Hawley, 16 Wall. 544. It was for the supposed mutual interest of the parties to enter into the license contract, and they acted intelligently and freely. There was a valuable and sufficient consideration moving from the plaintiff to its licensee to support the clause in question, and it was neither oppressive nor unreasonable. I do not perceive any good ground upon which the Trinidad Asphaltum Block Company could deny the binding force of this clause in

respect of these two machines. Does the defendant stand in any better position than the Trinidad Company?

The argument that the plaintiff is affected by an estoppel rests on wholly untenable ground. The plaintiff did nothing to mislead the defendant. The officials of the plaintiff company had no reason to suppose that the defendant expected to get an absolute title to the machines. The transaction, in so far as the plaintiff was connected with it, had in contemplation exactly the opposite result. The defendant, however, asserts that he bought the two Dietz machines without notice of any clog upon the title. But, upon the undisputed facts, it is difficult to see how such defense can be maintained. If it could be conceded that the defendant dealt touching these patented machines with John Farr only, still, on the face of the contract with Farr, it plainly appears that the title was in the Trinidad Company, and that that company was operating under a license from the plaintiff. Thus, at the outstart, by the very contract which the defendant sets up, knowledge of the license was directly brought home to him. It is to be observed that the subject-matter of the Farr contract was not these machines only. The defendant purchased, not the machines by themselves, but the machines in connection with the license which regulated and limited their use. It was one transaction. Then, again, the deed from the Trinidad Company to the defendant, conveying the title to the machines, transferred therewith the license. How can the defendant be heard to say that he acted in ignorance of the restrictive clause of the license? Knowledge is justly imputable to him, for he could remain in ignorance only by willfully shutting his eyes. He had within reach the means of information, and he was culpably at fault if he did not avail himself thereof.

The case of Mitchell v. Hawley, supra, is much in point. There the use by the purchasers of certain patented machines, constructed under a grant which bound the grantee not to sell or grant any license to use machines beyond the original term of the patent, was restrained; and, with reference to notice, the court said:

Suppose the rule was otherwise, and that the real owner, in order to defeat the title of the purchaser, must show that the latter knew what the facts were; the court would still be of the opinion that the decree ought to be affirmed, as the terms of the license which the seller gave to the purchasers were sufficient to put them upon inquiry; and it is quite obvious that the means of knowledge were at hand, and that, if they had made the least inquiry, they would have ascertained that their grantor could not give them any title to use the machines beyond the period of fourteen years from the date of the original letters patent, as he was only a licensee, and never had any power to sell a machine, so as to withdraw it indefinitely from the operation of the franchise secured by the patent. 16 Wall. 550.

There is positive proof that the defendant had actual knowledge of the clause in question before he entered into the contract of April 9, 1894. Thus, Mr. Farr deposes that the defendant told him that he understood the terms and provisions of the license, and knew that, unless he obtained the plaintiff's consent to the assignment of the license, he would be unable to use the patented machinery.

Mr. Birdseye deposes that during the negotiations with Farr the defendant stated that he would not buy, unless he could obtain the plaintiff's consent to the transfer of the license. No reason, from self-interest or otherwise, appears why either of these witnesses should falsify. In strong confirmation of their testimony is the stipulation of Farr, found in the contract of April 9, 1894, that he would have the license "regularly and legally transferred, and the said transfer accepted by said the International Pavement Company." The defendant seems to have been a man of business sagacity, and he was acting under legal advice. It is simply incredible that he did not acquaint himself with the terms of the license. His whole after-conduct shows that he had a perfect understanding of the provisions of the license. The proofs, direct and circumstantial, establish beyond doubt that the defendant had such actual knowledge before he acted. He must be regarded, under the proofs, as a purchaser of these patented machines, with notice of the qualified ownership of the Trinidad Asphaltum Block Company, to whose title he succeeded.

Is the restrictive provision in question equitably enforceable against the defendant at the suit of the plaintiff? I think it is. Plainly, the clause was intended for the protection of the rights of the plaintiff in the Dietz patent and the rights also of its licensees. As the defendant acquired the Dietz machines with notice of his vendor's contract restricting their use, he is, it seems to me, equitably bound by the restriction. Courts of equity have frequently restrained purchasers with notice from violating restrictive personal covenants relating to the manner of using land. Whitney v. Railway Co., 11 Gray, 359. The principle is justly applicable to contracts concerning personal property. De Mattos v. Gibson, 4 De Gex & J. 276, 282; Mitchell v. Hawley, supra.

In New York Bank-Note Co. v. Hamilton Bank-Note Engraving & Printing Co., 83 Hun, 593, 31 N. Y. Supp. 1060, where a person purchased from another a printing press, having knowledge of the existence of a contract between the vendor and a third person whereby the vendor agreed not to sell such presses except under certain restrictions, it was held that such third person was entitled to enforce his contract as against the vendee. Here the license contract fixed the status of the two Dietz machines. By the provisions of the contract, the plaintiff became pecuniarily interested in the restricted use of the machines, and to that extent acquired an equitable right therein. The Trinidad Asphaltum Block Company, indeed, held the legal title, but in subservience to the limitations and purposes specified. Hence a trust arose enforceable against any one taking the property with notice. Fletcher v. Morey, 2 Story, 555, 565, Fed. Cas. No. 4,864.

In Seymour v. Freer, 8 Wall. 202, 213, the court said:

A trust is where there are rights, titles, and interests in property distinct from the legal ownership. In such cases the legal title, in the eye of the law, carries with it to the holder absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and con-

stitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked.

In Legard v. Hodges, 1 Ves. Jr. 477, Lord Chancellor Thurlow said:

This maxim I take to be universal: that, wherever persons agree concerning any particular subject, that, in a court of equity, against the party himself and any claiming under him, voluntarily or with notice, raises a trust.

There can be no doubt that the plaintiff needs the interposition of a court of equity. The rights of the plaintiff are clear, and the case seems to me to be one calling for immediate relief by injunction. Let a decree for an injunction be drawn.