NEW YORK SECURITY AND TRUST COMPANY, Appellant, *v.* SARATOGA GAS AND ELECTRIC LIGHT COMPANY and Others, Defendants.

In the Matter of the Final Accounting of LAFAYETTE B. GLEASON, as Receiver of the Mortgaged Property of the SARATOGA GAS AND ELECTRIC LIGHT COMPANY.

On the Application of LAFAYETTE B. GLEASON, as Receiver, and THE NEW YORK SECURITY AND TRUST COMPANY, as Plaintiff, to Compel EDWARD WINSLOW PAIGE, an Attorney of this Court, Representing the Defendant, WILLIAM V. REYNOLDS, as Receiver, now Deceased, to Repay $4,770.22, Received by PAIGE, to GLEASON, as Receiver, or to the Plaintiff.

EDWARD WINSLOW PAIGE and LAFAYETTE B. GLEASON, as Receiver of the SARATOGA GAS AND ELECTRIC LIGHT COMPANY, Respondents.

*Receivers of a corporation — one in a mortgage foreclosure, the other in a sequestration suit — relative rights to amounts due for products of the corporation.*

A receiver of a gas company, appointed upon the foreclosure of a mortgage covering all the corporate property, real, personal and mixed, including " all lands * * * and choses in action, whether now owned, or hereafter acquired or constructed by said gas company, together with the appurtenances thereto, and all rents, tolls, issues, income and profits of said gas company, present and future," is entitled, as against a receiver appointed in a sequestration action based upon a judgment recovered against the company, to receive moneys due the gas company " for manufactured gas and electricity, the produce of its labor, and sold and delivered by it to various parties, and the consideration therefor due to it before the appointment of either receiver."

APPEAL by the plaintiff, the New York Security and Trust Company, from so much of an order of the Supreme Court, made at the Schenectady Special Term, and entered in the office of the clerk of the county of Saratoga on the 5th day of February, 1898, as allows and approves the payment by the receiver, Lafayette B. Gleason, to Edward Winslow Paige of sums of money aggregating $4,770.22, and overrules the exceptions of the plaintiff to those payments; and also from an order made at the Schenectady Special Term and entered in the office of the clerk of the county of Saratoga on the

5th day of February, 1898, denying the plaintiff's motion for an order directing Edward Winslow Paige to repay to the New York Security and Trust Company $4,770.22.

*Howard A. Taylor*, for the appellant.

*Edward Winslow Paige*, respondent, in person.

MERWIN, J.:

On February 1, 1887, the Saratoga Gas and Electric Light Company, as security for its bonds to the amount of $300,000, executed and delivered to the American Loan and Trust Company, as trustee a mortgage upon property described as follows:

"All the corporate property, real, personal and mixed, including all lands, easements, rights of way, buildings, fixtures, materials, supplies, machinery and plant, franchises, contracts and choses in action, whether now owned or hereafter acquired or constructed by said gas company, together with the appurtenances thereto, and all rents, tolls, issues, income and profits of said gas company, present and future."

In May, 1892, the New York Security and Trust Company was duly substituted as trustee in place of the loan and trust company. On August 1, 1893, the Light Company made default in the payment of interest on the bonds. This default having continued for sixty days, the whole principal was thereupon, in pursuance of the terms of the mortgage, declared to be due. On November 11, 1893, an action to foreclose the mortgage was commenced. At Special Term on November 16, 1893, L. B. Gleason was appointed receiver of the mortgaged property. At the same time, by the same court, W. V. Reynolds was appointed receiver in a sequestration action commenced by one Andrews against the light company on the 16th of October, 1893, based upon a judgment recovered by Andrews against the company on October 12, 1893, for the sum of $120.56. In the order appointing Reynolds it was provided that he should not, except upon the further order of the court, take into his possession any of the property committed to the custody of the receiver in the foreclosure action. Both orders were, in fact, made on the 29th of November, 1893. On that day Gleason, as receiver, took possession of the plant and operated it until April 2, 1896,

when it was transferred to the purchaser upon the foreclosure sale.

Thereafter the receiver, Gleason, filed an account of his proceedings, crediting himself as receiver, among other things, with certain payments to Reynolds as receiver to the amount of $4,770.22. The plaintiff, the security and trust company, excepted to the allowance of these payments. All of these payments had been made to the respondent, Mr. Paige, who was the attorney for Receiver Reynolds, and the moneys remained in his hands. Thereupon the plaintiff made a motion, returnable at the same time and place as the final hearing upon the settlement of the accounts of Receiver Gleason, for an order requiring Mr. Paige to repay to Receiver Gleason or to the plaintiff, the substituted mortgagee and the trustee for the bondholders, the said sum of $4,770.22.

Upon the hearing of these proceedings the motion for repayment was denied, and the exceptions of the plaintiff to the receiver's account were overruled. The plaintiff appeals from the order denying its motion for repayment, and also from so much of the order made upon the final accounting of the receiver as allowed and approved the payments excepted to and overruled the exceptions. There is a large balance still unpaid on the mortgage.

Of this sum of $4,770.22 the sum of $861.51 was paid to the receiver, Reynolds, or Mr. Paige on February 27, 1895, in pursuance of a Special Term order made January 23, 1895, after a hearing of counsel upon both sides, and the direction is that the amount be paid "on account of moneys due the latter from the former." This order was not appealed from. This item, as well as the items of $193.47 and $151.20, part of the total of $4,770.22, seems to be within the class of cash items received by the light company before the commencement of the action, in its general course of business and representing money to be used in the ordinary running of the business, and, therefore, according to the concession of appellant's counsel, not within the lien of the mortgage.

The main question is over the balance of the fund, being the sum of $3,564.04. The source of these moneys, as stated in the affidavit of the respondent in opposition to the motion, is as follows: "The moneys spoken of in these matters were moneys due the Saratoga Gas and Electric Light Company for manufactured gas and elec-

tricity, the produce of its labor, and sold and delivered by it to various parties, and the consideration therefor due to it before the appointment of either receiver."

The question then is this, can the debts or accounts due to the corporation upon the sale of the products of its plant be reached under the mortgage, as against the sequestration receiver?

The claim of the respondent seems to be that the rule applicable to the distribution of equitable assets in judgment creditors' actions is applicable here, and gives the sequestration receiver the prior claim, as that action was commenced before the foreclosure action. That, as it seems to me, is not the point here; but the point is whether, under and by virtue of the operation of the mortgage, the mortgagee, and through it the mortgage receiver, had on these debts or choses in action an equitable lien that was not cut off or affected by the sequestration action.

"An equitable mortgage may be constituted by any writing from which the intention so to do may be gathered." (*Payne* v. *Wilson,* 74 N. Y. 348, 351.) "Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or incumbrancers with notice." (3 Pom. Eq. Juris. § 1235, and cases cited.) This rule is said to be applicable to property not yet in being at the time when the contract is made. In section 1236, in the same book, it is said to be well settled that an agreement to charge or to assign or to give security upon, or to affect property not yet in existence or in the ownership of the party making the contract or property to be acquired by him in the future, constitutes an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract. "Whenever a positive lien or charge is intended to be created upon real or personal property not in exist-

ence or not owned by the person who grants the lien, the contract attaches in equity as a lien or charge upon the particular property as soon as he acquires title and possession of the same." (1 Jones Liens, § 42, and cases cited.) In *Wisner* v. *Ocumpaugh* (71 N. Y. 113) it was held that an agreement in a lease that the lessor should have, as security for the rent, a lien on any property which might thereafter be brought upon the premises created an equitable lien upon property thereafter brought thereon which attached as soon as the property was acquired by the lessee and brought upon the premises. " In equity there is no difficulty in enforcing a lien, or any other equitable claim constituting a charge *in rem*, not only upon real estate, but also upon personal estate, or upon money in the hands of a third person, whenever the lien or other claim is a matter of agreement, against the party himself and his personal representatives, and against any persons claiming under him, voluntarily or with notice, and against assignees in bankruptcy, who are treated as volunteers ; for every such agreement for a lien or charge *in rem* constitutes a trust, and is accordingly governed by the general doctrine applicable to trusts." (*Fletcher* v. *Morey*, 2 Story, 555, 565 ; 1 Jones Liens, § 93.) Assignees in bankruptcy take the property of the bankrupt subject to all equities against it in his hands. (*Kelly* v. *Scott*, 49 N. Y. 595, 602 ; *Cook* v. *Tullis*, 18 Wall. 332.) This rule is applicable to receivers of corporations. (Beach Rec. § 219 ; Gluck & B. Rec. [2d ed.] 19.)

The case of *Rochester Distilling Co.* v. *Rasey* (142 N. Y. 570) related to the right at law of an execution creditor to reach chattels not in existence, actually or potentially, at the time of the giving of a chattel mortgage. That case does not, I think, apply here. (See, also, *N. Y. Security Co.* v. *Saratoga Gas Co.*, 88 Hun, 569, 588.) The controversy here relates simply to equitable assets.

The debts or accounts, from which the moneys in controversy were derived, were within the description of the property covered by the mortgage. They were choses in action, arising from sales of the product of the plant. The mortgagee had, within the principles above referred to, an equitable lien thereon which attached as soon as they came into existence, and which was operative as against the sequestration receiver or the respondent. It is not suggested that the respondent has any better rights than the receiver for whom he acted.

It follows that the motion of the appellant should have been granted as to the sum of $3,564.04.

All concurred, except LANDON, J., not sitting.

Orders, so far as appealed from, reversed, with ten dollars costs and disbursements, and motion for payment to plaintiff by respondent Paige of the sum of $3,564.04 granted.