the amount of force he was exerting to pull up his team, were too much for the footboard. The plaintiff himself testified:

"I think I have got as good a grip as anybody in this town. I am good and strong, and had a good grip. I put a good deal of force in that grip, and exerted a good deal of strength on that footboard, in order to hold myself."

It is therefore quite clear that the plaintiff subjected the footboard to an unusual and extraordinary strain, in the manner in which he used the same.

3. There is no evidence that satisfactorily establishes that the plaintiff was free from contributory negligence at the time he received the injuries for which he seeks to make the city liable. We think that no error was committed by the learned trial judge in directing a nonsuit.

Plaintiff's exceptions overruled, and motion for a new trial denied, with costs, and judgment ordered for the defendant, with costs. All concur.

---

In re BUSCH BREWING CO.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. MORTGAGES—INSOLVENCY PROCEEDINGS—RECEIVER—RENTS AND PROFITS.
   Where mortgaged premises were inadequate to secure the amount due, and the mortgagor was insolvent, the court properly ordered the temporary receiver appointed in insolvency proceedings, and authorized to continue the business, to hold, subject to further orders, sufficient funds out of the proceeds of the business to pay interest on the mortgage during the time he occupied the premises.

2. SAME—FORECLOSURE.
   A court, after appointing a temporary receiver of an insolvent corporation, and restraining creditors from taking any action, properly removed the restraint, and permitted a foreclosure suit to proceed.

3. SAME—CORPORATIONS—PREFERRING CREDITORS.
   An order requiring the receiver of an insolvent corporation to hold rents and profits of the mortgaged premises for the payment of interest on the mortgage while the receiver used the property, does not create a lien within Stock Corporation Law (Laws 1890, c. 564) § 48, prohibiting an insolvent corporation from preferring any debt, the mortgage giving the equitable right to a lien on the rents and profits.

Appeal from special term, Erie county.

Matter of the voluntary dissolution of the Busch Brewing Company. There was an order requiring the temporary receiver to retain profits of the business subject to the further order of court, and he appeals. Affirmed.

Appeal by Charles D. Bigelow, temporary receiver of the Busch Brewing Company, from an order made at the Erie special term on the 25th day of July, 1898, and entered in the clerk's office of said county on the 26th day of July, 1898, "and from so much of said order as overrules the preliminary objection of the receiver to the granting thereof, and directs said receiver to retain certain moneys in his hands subject to the further order of the court." The notice of appeal is dated August 4, 1898. On the 21st day of June, 1898, the Niagara River Brewing Company commenced an action for the foreclosure of its mortgage against the Busch Brewing Company, and a notice of lis pendens was filed. On the same premises covered by its mortgage was a prior mortgage of $10,000, held by the Buffalo Loan, Trust & Safe-Deposit Company, upon which there was unpaid $10,000. The mortgage to the Niagara River Brewing Company

was dated the 17th of June, 1893, and executed by the Busch Brewing Company, and there was due upon it the sum of $45,000, with interest from the 17th day of June, 1897, all of which was due and payable on that day. No person other than the mortgagor was liable for the mortgage debt. The mortgagor was shown by the affidavits to be "entirely irresponsible and insolvent." Taxes and assessments amounting to $3,000 upon the property were overdue, making $58,000 due upon the prior mortgage and the mortgage given to the Niagara River Brewing Company and for the taxes aforesaid. The affidavits clearly show that the property was not worth to exceed $40,000. On the 27th of June, 1898, a petition of several directors, stating the insolvency of the Busch Brewing Company, and its inability to pay its just debts, was presented to a special term, and Charles D. Bigelow was appointed temporary receiver; and in the order so appointing him the creditors were restrained and forbidden from commencing an action against the Busch Brewing Company, and from taking any further proceedings in any action commenced before the entry of said order. That order was entered June 27, 1898. In the action to foreclose the mortgage, on the 21st of June, motion papers were served upon the Busch Brewing Company of an application to be made July 1, 1898, for the appointment of a receiver of the rents and profits of the mortgaged property affected by the foreclosure action. The affidavit of the receiver states that a large portion of the assets of the corporation consists of beer in the process of manufacture, "and that to complete the manufacture of said beer requires a period of three months from the time the process is commenced before the same is fitted for sale." His affidavit states that on the 29th of June, an order was made directing him "to continue the business of the said brewery for the purpose of finishing and selling the unfinished stock on hand, and permitting" him to incur expenses; and that, in pursuance of said order, he had taken possession of the plant of the brewing company, and was engaged in the manufacture and sale of such stock as was on hand, and that he was in occupation of the whole of the real estate covered by the mortgage.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Francis E. Wood, for appellant.

Norman D. Fish, for respondent.

HARDIN, P. J. Manifestly, the special term, upon the affidavits before it, found, as it was warranted in doing, that the property covered by the mortgage in the process of foreclosure was an inadequate security for the payment of the indebtedness secured thereby, and that the mortgagor was insolvent. Having reached that conclusion, the special term was warranted in holding that the mortgagee was entitled to the rents, issues, and profits of the real estate covered by the mortgage.

In Smith v. Tiffany, 13 Hun, 671, it appeared that the premises mortgaged were an inadequate security for the money due on the mortgage, and that the mortgagor was insolvent, and that the mortgage debt was all due; and it was said in the course of the opinion of Talcott, P. J., viz.:

"In such cases it is an equitable right of the mortgagee to have a receiver of the rents and profits of the mortgaged premises, even after a decree;" citing Astor v. Turner, 11 Paige, 436.

In Hollenbeck v. Donell, 29 Hun, 94, it was held that under section 713 of the Code of Civil Procedure the court has power to appoint a receiver of the rents and profits of the mortgaged premises when it appears that the premises are an inadequate security for the amount due, and are deteriorating in value, and that the mortgagor is insol-

rent.    That case was reviewed in the court of appeals (94 N. Y. 342),
and it was said that:

"The power [of the court] to appoint a receiver of the rents and profits of
mortgaged premises accruing pending a foreclosure was inherent in the court
of chancery before the adoption of the Code of Procedure. It was continued
by that Code (subdivision 5, § 244), and is not abrogated by the provision of the
Code of Civil Procedure (section 713), defining cases in which receivers may be
appointed; but, on the contrary, is reaffirmed by the general provision of said
Code (section 4) declaring that each of the courts therein named 'shall continue
to exercise the jurisdiction and powers now vested in it, * * * except as
otherwise prescribed.'"

It was held, however, that the plaintiff "was not entitled to a
receivership for the protection of that portion of the debt not yet due,
or of that portion of the premises as to which his rights to sell had not
accrued."

In Hamilton v. Austin, 36 Hun, 139, it was held, viz.:

"After the action of foreclosure has been commenced, the plaintiff may, if the
security is in jeopardy, intercept, through the aid of a receiver, the rents or em-
blements, or both."

In Rider v. Bagley, 84 N. Y. 461, it was held that whether a receiver
should be appointed in a mortgage foreclosure case rested in the dis-
cretion of the supreme court; and it was further held in that case
that, until the receiver was appointed, the owner of the equity of
redemption "had the right to receive the rents, and cannot be com-
pelled to account for them."    We are of the opinion that a proper
case was made at the special term for the appointment of a receiver
in mortgage foreclosure action, and that the court properly exercised
its discretion by commanding the receiver, who had been appointed
of the mortgagor's property, to retain in his hands, "subject to the fur-
ther order of the court, out of the net proceeds arising from the
operation of said brewery, sufficient to pay the interest on the mort-
gage of said Niagara River Brewing Company during the time that he
continues to operate the same."    When such further order shall be
made, it may become necessary to determine what portion of the pro-
ceeds arising from the operation of the brewery were properly derived
from the use of the real estate upon which the mortgage of the
Niagara River Brewing Company was a lien.    To that extent we see
nothing in the papers before us to prevent the mortgagee from receiv-
ing such rents and profits as properly arise from the allowance of the
possession of the temporary receiver appointed in the insolvent pro-
ceedings.    The order which is appealed from properly allowed the
action to foreclose the mortgage to proceed, and removed the restraint
that had theretofore been placed upon the foreclosure proceedings.
In re Binghampton General El. Co., 143 N. Y. 264, 38 N. E. 297; In
re Hamilton Park Co., 1 App. Div. 375, 37 N. Y. Supp. 310.

We are of the opinion that the order requiring the rents and profits
of the premises to be held for the further direction of the court does
not "constitute the creation of a lien, within the prohibition of the
forty-eighth section of the stock corporation law."    The equitable
right to the rents and profits of the real estate was given to the mort-
gagee at the time of the execution of the mortgage, in 1893, and in
the foreclosure action there is an assertion of its lien upon the realty,

and of its lien in equity upon the rents and profits of the real estate so covered by the mortgage. We think this case differs from Throop v. Lithographic Co., 125 N. Y. 530, 26 N. E. 742. In that case an action was brought by one of the trustees against a corporation, and an attempt was made to obtain a lien upon its property through the instrumentality of an attachment. In the course of the opinion it was said:

"The plaintiff, by the attachment and seizure thereunder, secured a preference over other creditors of the corporation. The title to the property levied upon was not changed by the seizure. The attachment was a step in a proceeding which had for its ultimate object the transfer of the title through a sale on an execution upon the judgment which might be obtained in the action, and to enable the plaintiff thereby to realize the payment of his debt."

The case differs from the one in hand. Here the plaintiff in the mortgage foreclosure case is asserting a lien given in virtue of the terms of the mortgage upon the rents, issues, and profits issuing out of the real estate covered by it; and the mortgagee's right grows out of the equitable considerations incident to the mortgage and the debt secured thereby. Manufacturing Co. v. Cannella, 89 Hun, 23, 34 N. Y. Supp. 1065. We see no equities presented in the motion papers in favor of the insolvent mortgagor, or of its creditors represented by the temporary receiver, which should enable him to arrest the equitable rights of the mortgagee.

In New York Security & Trust Co. v. Saratoga Gas & Electric Light Co., 30 App. Div. 93, 51 N. Y. Supp. 752, it was said:

"Assignees in bankruptcy take the property of the bankrupt subject to all equities against it in his hands. * * * This rule is applicable to receivers of corporations."

The only effect of the order made is to require the temporary receiver to hold sufficient funds until the further order of the court that may be deemed adequate to pay the reasonable rent of the premises of which he is in possession.

In Insurance Co. v. Spicer, 12 Hun, 117, it was held:

"Where a person, knowing of the mortgage, and that the mortgagor could not pay the mortgage, has obtained possession of mortgaged premises under the authority of the mortgagor, the owner of the equity of redemption, he may be required to surrender up possession, or pay a reasonable rent therefor, to the receiver appointed to collect the rents and profits of the property for the benefit of the mortgagee."

The temporary receiver has taken possession of the property, and it is only just and equitable that he should pay, or retain in his hands, a sum that will liquidate a reasonable rent for the premises. It was not necessary to appoint another person receiver in the mortgage case. Farmers' Loan & Trust Co. v. Hotel Brunswick Co., 12 App. Div. 626, 42 N. Y. Supp. 350.

In Astor v. Turner, 2 Barb. 444, it was held:

"Where a bill is filed to foreclose a mortgage on leasehold premises, which are a scanty security for the debt, and the mortgagor is insolvent, and his assignee in possession, a receiver will be appointed, and the owner of the equity of redemption be directed to pay an occupation rent."

It does not follow from the language of the order that the court will ultimately direct the payment for the rents, issues, and profits,

by the receiver, of a sum equal to the interest on the mortgage debt. We think there was no abuse of discretion at the special term, and that the order, so far as it is appealed from, should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.