CHATFIELD, Supervisor of Town of Elbridge, v. CAMPBELL et al.

(Supreme Court, Special Term, Onondaga County. June, 1901.)

1. Town Collector's Bond—Lien—Foreclosure in Equity.
    Laws 1890, c. 569, §§ 52, 53, 66, provide for an undertaking by the collector of taxes, with sureties, which undertaking shall be a lien on the real estate of such collector and his sureties. *Held* that, on default of collector to pay over the tax moneys which he has collected, such liens may be foreclosed in equity by the town supervisor.

2. Same—Lands of Surety.
    A town collector deposited tax moneys with an insolvent banking firm, of which one of his sureties was a partner, and the moneys passed into firm assets, and the assets thereafter passed into the hands of the general assignee of the firm. *Held,* that the lands of the banker, in a suit in equity to foreclose the lien of the town against the collector and the sureties on his bond, should be first sold, as he, or his estate on his death, was the principal debtor to the town.

3. Same—Money Deposited in Bank of Surety.
    Where moneys are deposited in a bank of which a surety on a town collector's bond is a member, on insolvency of the bank the town supervisor was entitled to payment before the other general creditors of the deceased surety, even though the estate of such surety was insolvent.

4. Same—Deceased Surety—Rights of Representative.
    In an action to enforce a lien against a town collector and his sureties, one of whom is deceased, where the complaint alleges that the administrators of the decedent claim some interest in the premises, which accrued subsequently to the lien of the tax collector's bond, the administrators are entitled to defend on the ground that the plaintiff has, on the facts, an adequate remedy at law.

Action by Byron Chatfield, supervisor of the town of Elbridge, against Price Campbell and others. Judgment for plaintiff.

Hiscock, Doheny, Williams & Cowie, for plaintiff.
Baldwin & Magee, for defendants Campbell and Post.
Homer & Waldo Weston, for defendants Rodger and Lewis.

ANDREWS, J. Every person elected or appointed collector of a town in this state is required to execute an undertaking, with two or more sureties, to the effect that he will well and faithfully execute the duties of his office, and deliver it to the supervisor. The supervisor shall file the undertaking in the office of the county clerk, who shall make an entry thereof in a book to be provided for that purpose, in the same manner as judgments are entered of record; "and every such undertaking shall be a lien on all the real estate held jointly or severally by the collector, or his sureties, within the county at the time of the filing thereof, and shall continue to be such lien, until its condition, together with all costs and charges which may accrue by the prosecution thereof, shall be fully satisfied." The parties executing this undertaking are jointly and severally liable for the damages caused to any person or party by reason of a breach of its terms. Town Law (Laws 1890, c. 569) §§ 52, 53, 66. If a collector shall neglect or refuse to pay over the moneys collected

by him to any of the persons to whom he is required to pay the same by his warrant, or to account for the same as unpaid, the county court, on proof of such fact by affidavit, shall make an order directed to the sheriff of the county commanding him to levy such sum as shall remain unpaid by the collector out of his property. The sheriff shall cause such warrant to be executed, and, if he fails to obtain the entire amount due, he shall so state in his return, and the county treasurer shall give notice to the supervisor of this fact. The supervisor shall forthwith cause the undertaking of the collector to be prosecuted, and shall be entitled to recover thereon the sum due from the collector, with the costs of the action. Tax Law (Laws 1896, c. 908) §§ 260, 262.

It appears that in the fall of 1897 Price Campbell was chosen collector of the town of Elbridge. One William C. Rodger, since deceased, and Robert E. Green conducted a banking business in that town under the firm name of Rodger & Co. On or about December 15, 1897, the collector's official bond was executed by Campbell, Rodger, and the defendants Laird and Post. At this time the bank was insolvent. Between December 20, 1897, and January 2, 1898, Campbell, as collector, deposited in Rodger & Co.'s bank $800 of tax moneys. On January 2d Rodger died, and the defendants Lewis and C. Julia Rodger were subsequently appointed administrators of his estate. The banking business was continued by Green as surviving partner until January 7, 1898, when he made a general assignment for the benefit of his creditors. Between January 2d and January 4th, Campbell deposited $575 of tax money in addition to his prior deposits. No part of these deposits has been repaid, and they are still due from Campbell to the town. Subsequently the proper steps were taken, and the sheriff was directed to levy out of the property, personal and real, of Price Campbell, the sum of $1,375. The sheriff made a return stating that he could find no property on which to make such levy. The county treasurer thereupon notified the supervisor, and this action was begun. The complaint alleges substantially all the facts that have been stated; describes certain pieces of property situated within the county which belonged severally, at the time the bond was filed, to Rodger, Laird, and Post; alleges that the administrators and various other defendants, who are the heirs at law of William C. Rodger, have or claim to have "some interest in or lien upon the premises above described, or some part thereof, which interest or lien, if any, accrued subsequently to the lien of said bond"; and demands judgment of foreclosure and sale of the premises in the usual form, to satisfy the amount due on the bond. It further asks that the lands of William C. Rodger be first sold, on the ground that, under the circumstances, he, in equity, is primarily liable to make good the amount due, and that the defendants Campbell, Post, and Laird be adjudged to pay any deficiency. The defendants Campbell and Post answer, also claiming that the lands of Rodger should be first sold. The defendants C. Julia Rodger and Alfred D. Lewis, as administrators, answer, and allege that the plaintiff ought not to maintain this action in

equity, for the reason that the facts pleaded disclose an adequate remedy at law. They then deny, on information and belief, each and every allegation in the complaint, except some formal matters, and submit their rights to the court. The other defendants have not appeared.

At the close of the plaintiff's evidence the same defendants again raised the question as to whether or not the plaintiff had an adequate remedy at law, and moved to dismiss the complaint upon this ground. This motion was formally denied, and they then, without offering any evidence, rested. It is suggested by the plaintiff and by the defendants Post and Campbell that the administrators had no standing in court upon this question. They have no title as administrators to, or interest in, the real property sought to be foreclosed, and no personal claim is made against them for deficiency or otherwise. The title of Mr. Rodger's real estate vested upon his death in his heirs. They do not defend. One difficulty of this proposition is that the complaint alleges the administrators "have or claim to have some interest in the real estate." This may easily be true. If, for instance, Mr. Rodger's personal estate were insolvent, and they had begun a proceeding in surrogate's court to sell his real estate for the payment of debts, I assume that they would be necessary parties to this action. Wilts. Mortg. Forec. § 145.

The more serious preliminary question is whether, under the circumstances disclosed, an action in equity can be maintained for the foreclosure of this lien. It must be conceded at the outset that the lien created by the town law is a purely statutory one, and that there is no remedy provided in the statute itself for its enforcement. It must also be conceded that, if the plaintiff had a complete and adequate remedy at law, he is bound to resort to that remedy. Starting with these premises, the defendants assert that a court of equity has no jurisdiction. The statute defines the relief to which the plaintiff is entitled, and it is an entirely adequate one. He may sue those joining in the bond as for a debt, and then their property can be sold on execution. In support of these propositions, and as a case in point, the defendants cite Upham v. Paddock, 13 Hun, 571. The only question decided in this case was that the plaintiff was not entitled, by virtue of the lien created by the filing of a collector's bond, to the rents and profits of the land on which the bond was a lien, which had been actually collected by the owner thereof. In his discussion, however, the learned justice writing the opinion spoke of the nature of such a lien as the present. It was not a lien by mortgage, he said, but it was created by statute, and was more nearly analogous to a lien by judgment. The statute provides, he says further, no special mode of enforcing the lien. "The only mode, therefore, is by a suit on the bond to recover the amount due from the collector; and, judgment being obtained, the real estate which is subject to the lien may be sold by the sheriff upon execution." It is with great hesitation that I fail to follow this intimation, but it seems to be opposed to the great weight of authority.

In fact, it seems to be the rule that, except in the case of those common-law liens which simply give the right to the possession of certain property until some debt or demand due to the person retaining it is satisfied (and many, if not all, of these now seem to be provided for by section 1737 of the Code of Civil Procedure), except in the case of judgment liens which can be enforced directly by a sale of the property, and except in cases of those other statutory liens where the remedy to be pursued is pointed out by statute itself and is exclusive, a party who has a lien or charge on property may always come into a court of equity and enforce his rights, either by a judicial sale of the property itself and a distribution of its proceeds, or by means of sequestration of the property and an appropriation of its rents and income until the lien is satisfied. 3 Pom. Eq. Jur. § 1233; Machine Co. v. Miner, 28 Kan. 441; Fletcher v. Morey, 2 Story, 555, Fed. Cas. No. 4,864; Gilchrist v. Railroad Co. (C. C.) 58 Fed. 708; Hovey v. Elliott, 118 N. Y. 124, 23 N. E. 475. In the article on "Liens" in the Encyclopedia of Pleading & Practice it is stated that:

"As a general rule, liens are enforceable in equity unless another mode of enforcement is provided by law, except in the case of liens accompanied by possession, which, as a rule, cannot be actively enforced, in the absence of a statutory remedy. Statutory liens are enforceable in equity when the statute provides no method of enforcement."

So, in Jones on Liens, at section 94, it is said that the foreclosure of a lien is either a statutory or an equitable proceeding. At law there is no remedy beyond retaining possession. In Wilder v. Butterfield, 50 How. Prac. 385, an action similar to the present seems to have been sustained. There a judgment was allowed declaring a lien upon all the real estate in the county of Jefferson belonging to the obligors, providing that all must be sold under such judgment, if needs be, to meet any deficiency, and ordering a reference to ascertain specifically what real estate was held by the several obligors. So, in Crisfield v. Murdock, 127 N. Y. 315, 27 N. E. 1046, an action of the same character as that at bar was brought. An objection was made upon the trial that the plaintiff had an adequate remedy at law, but this question was neither discussed nor decided either by the general term or by the court of appeals. The proposition which seems to be maintained, at least impliedly, in the cases which have been cited, is also the one that in reason should prevail. The statute creates a lien upon all the real property owned by the sureties at the time the bond is filed. What adequate remedy at law is there for the protection and enforcement of this lien? The party for whose benefit it is created clearly cannot take possession. If the sureties are sued on their joint and several obligation, and a money judgment obtained against them, this judgment becomes a lien upon the property owned by them at the time it is docketed. If they had parted subsequently to the filing of the bond with any of their real estate, if other judgments had been obtained against them, or other liens created, such transfers or judgments or liens would take precedence of the judgment lien. If the sureties had no per-

sonal estate out of which the judgment could be collected by execution, a second action might in many cases be necessary to enable the plaintiff to collect the amount due, and to enforce the statutory lien existing in its favor. I am therefore of the opinion that the objection as to the form of the action must be overruled.

The remaining question to be considered arises upon the claim that payment should be enforced in the first instance from the real estate that belonged to Mr. Rodger. As has been seen, Rodger & Co. was insolvent on December 20th. Between that time and January 2d $800 was deposited in the bank by Campbell. On the last-named day Rodger died. On the 3d and 4th, $575 more was deposited. On the 7th, Green made the general assignment. No part of these deposits has ever been repaid. In the bank Mr. Rodger had a two-thirds interest. Green was insolvent. The result is, therefore, that Rodger & Co. received and retained $1,375, which is applicable to the payment of the firm debts. By so much the personal estate of Mr. Rodger is relieved of claims for which it would otherwise be liable. This is as much so of the deposits made after his death as of those made prior thereto. It may be true that this event dissolved the firm. It may be true that thereafter Green had no right to receive deposits, and his act in so doing would not bind the Rodger estate. But when he did receive them, and did turn them over to the assignee without objection from any one, the latter held them as an asset of the estate, and the total claims against it will be by so much decreased. As is said in Wilder v. Butterfield, cited above, the collector is, on the face of the bond, the principal debtor. If he fails to pay, his sureties are liable, and if one of them should make the payment he would be entitled to call upon the other for contribution. But here the facts lead to a different result. If Rodger were alive, and paid this $1,375 to the plaintiff, he could not call upon the collector or any one of the other sureties to indemnify him in whole or in part. The fact that he had received the taxes and benefited by them would be a sufficient answer to such a claim. The fact that his firm appropriated the taxes, and that the result of such an appropriation was to benefit Rodger or his estate, makes him, in equity, the principal debtor. It would be equally so if the payment were involuntary. If his land had been sold under a decree of the court, to make good the deficiency, he could not complain. Again, as between these parties he is bound to make good the loss. As against Rodger, therefore, Campbell and his co-sureties would have been entitled to a decree that the lien of the bond be enforced against his real estate. Assuming, however, that his estate is insolvent, and his general creditors need to resort for satisfaction of their claims to his real estate (and it is only on this supposition that the administrators have any interest in the result of this case), have these creditors any equities in the matter which would lead to a different result? Crisfield v. Murdock, already cited, is, I think, conclusive on this point. If a mortgagee having a specific lien acquired after bond was filed cannot be heard on this subject, surely a general creditor cannot. And in the case mentioned the mort-

gagee was also a creditor. I am therefore of the opinion that the plaintiff is entitled to the relief demanded in the complaint. Proper findings may be prepared. If they are not agreed upon, they may be settled on proper notice.

Ordered accordingly.